407 So.2d 993 (1981)
AMERICAN RISK ASSURANCE COMPANY, Appellant,
v.
Mary BENRUBE, Appellee.
No. 81-366.
District Court of Appeal of Florida, Third District.
December 15, 1981.
Rehearing Denied January 12, 1982.
Ponzoli & Wassenberg and Ronald P. Ponzoli, Miami, for appellant.
Samuel Sheres, Hollywood, for appellee.
Before DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.
FERGUSON, Judge.
American Risk Assurance Company appeals from an order of summary judgment wherein the trial court found as a matter of law that appellant as personal injury insurer was liable to appellee, Mary Benrube, for medical bills already paid by Medicare. We affirm.
The facts are as follows. On November 3, 1979, the appellee, a seventy-nine year old widow, was struck by a vehicle while crossing an intersection. Appellee was severely injured and was hospitalized for several weeks. Though eligible for personal injury benefits provided by appellant as insurer of the owner of the vehicle, appellee filed a claim for her medical bills with Medicare under Part A Medicare, 42 U.S.C.A. §§ 1395c, 1395(i-l) and Part B Medicare, 42 U.S.C.A. § 1395j-Blue Cross/Blue Shield. Medicare and Blue Cross/Blue Shield paid a substantial portion of appellee's medical bills, and pursuant to Section 627.736(1)(a), Florida Statutes (1971) (repealed effective July 1, 1982), American Risk paid eighty-percent of the remaining medical bills. Appellant refused to pay Benrube for any of the bills already paid for by Medicare or Blue Cross/Blue Shield because the policy guidelines of American Risk provide that American Risk will not be liable for duplicate payments. The guidelines also provide that, "the insurer paying such [duplicate] benefits shall be entitled to recover from A.R.A. its equitable pro rata share of the benefits paid and expense incurred in processing the claim." The trial court found that as a matter of law American Risk was the primary insurer and had an obligation to pay appellee for medical expenses incurred up to the limits of its policy regardless of the Medicare payments. It is undisputed that the medical expenses incurred by appellee are far above the limits of appellee's policy.
Though we agree with appellant that, as a general rule, the Florida legislature has attempted to eliminate duplication of benefits from the Florida Automobile Reparations *994 Reform Act, Sections 627.730-627.741, Florida Statutes (1979) (repealed effective July 1, 1982), we find no such intent with respect to payments made by Medicare. Section 627.736(4), Florida Statutes has been revised, and in 1977 and 1979 that Section provided that benefits received under any workers' compensation law or Medicaid as provided under 42 U.S.C.A. § 1396 et seq., should be credited against payments under the insurance policy. As subsequently amended, Section 627.736(4), Florida Statutes (Supp. 1980), the statute still limits credits to benefits received under the workers' compensation law or Medicaid. We do not view the omission of payments made by Medicare as mere oversight.
In Section 627.739(2), Florida Statutes (1979) (repealed effective July 1, 1982), the legislature expressly provides that as to the named insured and dependent relatives residing in the same household, the named insured could elect, in exchange for premium modifications, that benefits payable under Medicare, 42 U.S.C.A. § 1395, be deducted from those benefits otherwise payable pursuant to Section 627.736(1). This statutory provision does not limit Benrube's ability to receive payments under the policy because Benrube is neither the named insured nor a dependent relative of the named insured residing in the same household. American Risk admits in its brief on appeal that the $8,000.00 deductible of its insured does not apply to Benrube who is neither the named insured nor the dependent relative living in the insured's household, and, therefore, Benrube had available to her the full $10,000.00 of the policy benefits. The same logic and rule applies to Section 627.739(2) and any election to limit duplicate payments from Medicare; duplicate payments may not be prohibited with respect to others than the insured and dependent relatives residing in his household. The clear impact of Section 627.739(2) is that duplicate payments are, in fact, contemplated because the insurance company is the primary insurer.
The United States Government may not pay a Medicare claim pursuant to 42 U.S.C.A. § 1395y where payment has been made or can reasonably be expected to be made. Further, any payment under the title is conditioned on reimbursement to the appropriate trust when notice or other information is received that payment for such item or service has been made pursuant to a state law or plan. There is no language in the act which can be interpreted as relieving a primary carrier, either temporarily or permanently, from its responsibility to make prompt payment of valid claims.
On December 5, 1980, subsequent to this case, Congress passed Public Law 96-499, § 953, which clarified 42 U.S.C.A. § 1395y(b) and provided for reimbursement when duplicate payment is made under any workmen's compensation law or plan, or under an automobile or liability insurance policy or plan including a self-insured plan, or under no-fault insurance. The revised statute also permits waiver of reimbursement under certain circumstances by the Secretary of HEW. We note, without discussing the legal merits, that a practical effect of the ability of the Secretary of HEW to waive reimbursement for duplicate payments under certain circumstances is to provide an aged or disabled beneficiary with additional sums in order to pay those portions of medical expenses and other disability losses not usually covered by other plans when that person's medical expenses have exceeded the policy limits of the no-fault insurance. The waiver authority is consistent with prior judicial determinations that Medicare is a social welfare program and not an insurance or reimbursement plan within the ordinary meaning of these terms. Atkins v. Allstate Insurance Co., 382 So.2d 1276 (Fla. 3d DCA 1980). Even if there were deemed to be no waiver provision prior to December 5, 1980, it is up to the federal government to seek reimbursement.
Accordingly, we hold that the non-duplication provision in the American Risk policy guidelines cannot apply to Medicare benefits received by a person who is neither the insured nor dependent relative living in the insured's household. A private insurer may not refuse to pay benefits for which it is *995 primarily liable for the reason that those expenses have been paid by Medicare.
Affirmed.