**Kimberly Ann JOHNSON, et al., Plaintiffs,**

v.

**CUMIS INSURANCE SOCIETY, INC., Defendant.**

**Civ. A. No. 85–1946.**

United States District Court, District of Columbia.

Jan. 14, 1986.

---

Bernadette Gartrell, Washington, D.C., for plaintiff.

Andrew Kline, and Irwin Liptz, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, District Judge.

This is a diversity action concerning the scope of coverage afforded by an insurance policy. Both parties have moved for summary judgment. The sole question before the Court is whether, as a matter of law, plaintiff Kimberly Ann Johnson was covered by the insurance policy on the day her

car struck and killed a pedestrian. For the reasons stated below, the Court concludes that Kimberly Ann Johnson was not covered by the policy on the day of the fatal accident. Accordingly, summary judgment is entered for the defendant.

## I. STATEMENT OF FACTS

The material facts are not in dispute. On August 14, 1982, defendant and plaintiff Leroy E. Johnson contracted for automobile liability insurance. The policy was in effect from August 14, 1983 to February 14, 1984 and provided coverage for certain cars and for certain family members, including Kimberly Ann Johnson, Leroy Johnson's daughter. On August 18, 1983, Leroy Johnson was mailed an "amendment of policy provision" which stated, in part:

> In accordance with the requirements of the District of Columbia no-fault law, all policy coverages shall be suspended for you, or any family member, who operates any vehicle during any period when that person's driver's license is suspended or revoked.

During 1982 and 1983, Kimberly Ann Johnson was issued a number of traffic citations for violations of Maryland law. Ms. Johnson failed to contest those violations. Finally, on November 16, 1983, Ms. Johnson went to the District of Columbia Department of Motor Vehicles to obtain a duplicate of her license. There she was served with an Official Notice of Proposed Suspension of her District of Columbia operator's permit, and Ms. Johnson signed the notice to acknowledge her receipt of it. The notice stated, in pertinent part:

> You are hereby notified that, unless you apply for a hearing ... your District of Columbia motor vehicle operator's permit ... is suspended effective five days ... from the date of service of this notice and that thereafter it shall be unlawful for you to operate a motor vehicle in the District of Columbia.

Ms. Johnson was also orally advised that she had to pay $60 in unpaid Maryland traffic citations or face suspension of her license. Ms. Johnson then caused a third party to pay the $60 debt, and payment of that amount was received by the Administrative Clerk of the District Court of Maryland on November 25, 1983. Ms. Johnson did not request a hearing within the specified five-day period, however, and the suspension of her operator's permit became final on November 24, 1983. Ms. Johnson never sought appeal of that suspension.

On February 4, 1984, Ms. Johnson was driving a car covered by the insurance policy when, at a point near Bladensburg Road and Route 450 in Prince George's County, Maryland, her car struck and killed Maria Semciw, a pedestrian.

After the accident, Ms. Johnson learned that her operator's permit was suspended. On February 8, 1984, after paying an additional $60, her permit was reinstated. At no time between November 24, 1983 and February 4, 1984 was Ms. Johnson directly notified that her license was suspended or that, due to the suspension, she was not covered under the insurance policy.

On January 4, 1985, Maria Semciw's personal representative filed a wrongful death and survivorship action against Leroy and Kimberly Ann Johnson in the Circuit Court for Prince George's County, Maryland. Defendant has refused to defend the Johnsons in that action or to acknowledge that Kimberly Ann Johnson was covered by the policy at the time of the accident.

## II. DISCUSSION

Resolution of this case requires this Court to set sail upon the "uncharted waters" of the District of Columbia no-fault law. *See Rousey v. Rousey,* 499 A.2d 1199, 1209 n. 7 (D.C.App.1985). The pertinent section of that law states:

> *Grounds for cancellation of a policy.* —No insurer shall cancel a policy except:
> \*      \*      \*      \*      \*      \*
>
> (3) Where the license of an insured has been suspended or revoked during the

period of a policy of motor vehicle insurance, the insurance shall not provide coverage for such insured during the period of suspension or revocation.

D.C.Code § 35–2109(a)(3) (1985 Supp.). Defendant thus contends that, because Kimberly Johnson's license was officially suspended on the date of the accident, she was not covered by the policy as a matter of law.

Plaintiff, however, points to another provision in the law:

*Notice required of cancellation of or refusal to renew policy.*—No cancellation or refusal to renew by an insurer of a policy of motor vehicle insurance shall be effective unless the insurer has delivered and mailed to the named insured, at his or her last known address, a written notice of intent to cancel or refusal to renew. The required notice shall be provided to the named insured at least 30 days prior to the effective date of cancellation, or in the case of nonrenewal, 30 days prior to the end of the policy period.

D.C.Code § 35–2109(b) (1985 Supp.). Plaintiffs argue that, because Leroy Johnson never received the required notice, Kimberly Johnson necessarily was covered by the policy at the time of the accident.

■ There is no reported case law on the construction of these provisions of the no-fault law which would serve to guide this Court's interpretation of the statute.[1] The Court therefore must look to the language and purpose of the statute to determine its proper construction. *See, e.g., Florida Power & Light Co. v. Lorion,* —— U.S. ——, 105 S.Ct. 1598, 1603, 84 L.Ed.2d 643 (1985); *Unification Church v. Immigration and Naturalization Service,* 762 F.2d 1077, 1083–84 (D.C.Cir.1985).

■ Analysis of the words and structure of the statute reveals that the notice requirement of Section 35–2109(b) is not applicable to "suspensions" of insurance coverage effected under Section 35–2109(a)(3). First, a temporary suspension of insurance coverage during the period in which a driver's license is suspended is not commonly understood to constitute a "cancellation or refusal to renew" a policy. As the Supreme Court recently noted, in construing a statute "it is appropriate to assume that the ordinary meaning of the language ... employed 'accurately expresses the legislative purpose.'" *Mills Music, Inc. v. Snyder,* —— U.S. ——, 105 S.Ct. 638, 645, 83 L.Ed.2d 556 (1985) (citations omitted); *see also United Scenic Artists, Local 829 v. National Labor Relations Board,* 762 F.2d 1027, 1032 n. 15 (D.C.Cir.1985).

■ This "plain meaning" reading is amply supported by the purpose underlying the notice requirement provision. That purpose evidently was to give the insured adequate time to procure new coverage before coverage under his old policy lapsed. *See* D.C.Code § 35–2109(b)(3) (1985 Supp.).[2] Those drivers whose licenses are suspended, however, could not obtain new coverage because Section 35–2109(a)(3) precludes insurers from providing such coverage. Thus, the purpose of Section 35–2109(b) would not be served by including suspensions within the scope of that provision.

The Court also notes that its construction avoids potential conflict between Sections 35–2109(a)(3) and 35–2109(b). If "cancellation or refusal to renew" is read to include "suspensions" of coverage during suspensions of driver's licenses, then the insurer is subjected to conflicting mandates. Under Section 35–2109(b), the insurer must notify the insured and wait 30 days before

---

1. Research has uncovered only three cases which even address the no-fault law, and none of the cases relates to the instant question. *See Nasaka v. Data Access Systems,* 602 F.Supp. 761 (D.D.C.1985); *Dimond v. District of Columbia,* 618 F.Supp. 519 (D.D.C.1984); *Rousey v. Rousey,* 499 A.2d 1199, 1209 n. 7 (D.C.App.1985).

2. This purpose is consistent with the purpose motivating the no-fault law as a whole, which was to provide adequate protection for accident victims by mandating insurance coverage. *See* D.C.Code § 35–2101(b); *see also Nasaka,* 602 F.Supp. at 762; *Dimond,* 618 F.Supp. at 525.

halting coverage. Section 35–2109(a)(3), however, commands that "the insurance shall not provide coverage for such insured during the period of suspension" and thus, on its face, precludes the insurer from providing any coverage during the 30–day notice period. It is a well-settled tenet of statutory construction that statutes should be construed so as to avoid such internal inconsistencies and absurd results. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982).

Accordingly, the Court concludes that defendant was not required to comply with Section 35–2109(b) and that, pursuant to Section 35–2109(a)(3), Kimberly Johnson was not covered by the policy at the time of the accident.

Plaintiffs offer the alternative argument that the suspension of Kimberly Johnson's license was improper and that, since the license suspension was invalid, the suspension of insurance coverage was invalid as well. The Court need not address this argument.

Plaintiffs' exclusive route for judicial review of the license suspension is to the District of Columbia Court of Appeals. License suspensions clearly are "contested cases" for purposes of the District's Administrative Procedure Act. *See* D.C.Code §§ 40–302(a); 1–1509 (1981 ed.). Under Section 1–1510(a) of the D.C.Code, judicial review of administrative decisions in contested cases is limited to the D.C. Court of Appeals. *See District of Columbia v. Douglass*, 452 A.2d 329, 333 (D.C.App. 1982); *see also Cheek v. Washington*, 333 F.Supp. 481, 483 (D.D.C.1971).[3] As such, this Court lacks jurisdiction to hear plaintiffs' arguments.

---

**3.** While the validity of *Cheek* as to review of agency actions which raise federal questions was undercut by *District Properties Associates v. District of Columbia*, 743 F.2d 21, 25–27 (D.C. Cir.1984), plaintiffs herein do not allege that this case involves any federal questions. Thus, *Cheek* remains valid precedent.