**John D. CARPENTER, Petitioner,**

v.

**DISTRICT OF COLUMBIA TRAFFIC ADJUDICATION APPEAL BOARD, Respondent.**

**No. 86–511.**

District of Columbia Court of Appeals.

Submitted May 21, 1987.

Decided Aug. 19, 1987.

Edward F. Kearney, was on the brief, for petitioner.

James R. Murphy, Acting Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Charlotte Brookins-Pruitt, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before ROGERS and STEADMAN, Associate Judges, and REILLY, Senior Judge.

STEADMAN, Associate Judge:

Petitioner's driver's license was suspended for one year because his motor vehicle was operated while uninsured. We reject petitioner's contentions that he was denied a fair hearing and that the decision was not supported by substantial evidence. However, since the District of Columbia Traffic Adjudication Appeal Board ("the Board") imposed a suspension in excess of that permitted by the applicable regulations, we remand for imposition of a lawful period of suspension.

## I

It is undisputed that petitioner's vehicle was not insured for approximately a six-month period in violation of D.C. Code § 35–2103(a) (Supp.1986). At a hearing requested by petitioner, his defense was that the car had been parked at one location and had not been operated during the period it was uninsured.[1] After receiving petitioner's testimony, the hearing examiner informed petitioner that she had computer information that this vehicle had received a citation during the period in question at a location other than where petitioner had stated the vehicle had been parked. Petitioner did not effectively respond when given an opportunity to change his testimony.[2] She therefore concluded that petitioner had testified falsely and that in fact the vehicle had been operated while it was uninsured. The examiner concluded the hearing by ordering a 365–day suspension forthwith and informing petitioner of his right to seek an occupational license during the period of suspension. The computer printout relied on by the hearing examiner was not offered in evidence at the hearing nor shown

to petitioner at that time, but is part of the record on appeal. The Board summarily affirmed the decision of the examiner.

## II

██ Petitioner first argues that he was denied a fair hearing when the examiner failed to show him the computer printout. Citing *Quick v. Department of Motor Vehicles*, 331 A.2d 319 (D.C.1975), Carpenter contends that he was deprived of an opportunity to rebut allegedly misleading misstatements made by the hearing examiner. In *Quick*, however, the examiner consulted the operator's driving record without notice to the motorist. In this case, petitioner was explicitly told by the examiner that she had part of petitioner's vehicle's record before her. Furthermore, petitioner's contention that the examiner misstated certain information on the printout pertaining to whether the ticket had been paid or whether it was for a moving or parking violation was irrelevant to the critical issue as to how the vehicle came to be somewhere other than where petitioner placed it. On that issue, the examiner clearly and accurately represented to petitioner that his vehicle had received at least one citation during the time span at issue and was given the specific location of that infraction. Petitioner was then given an opportunity, which he did not use, to explain this apparent anomaly. *See Pillis v. District of Columbia Hackers' License Appeal Board*, 366 A.2d 1094, 1097 (D.C.1976), *cert. denied*, 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977) (agency employee's reading complaint in file to hacker instead of permitting him to review the complaint himself was not prejudicial as he received the information necessary to his defense).

██ Petitioner's second argument that the Board's decision is not supported by

---

1. D.C. Code § 35–2103(d)(2)(A) (1986 Supp.) states that a license shall be suspended or revoked of an owner or operator "who has been convicted of a violation of this chapter, or *who knowingly operates or knowingly permits the operation of an uninsured motor vehicle,* or who knowingly provides the Director with false information as requested by the Director pursuant to this chapter." (Emphasis added.)

2. The transcript of the hearing states that petitioner's response to the hearing examiner's question whether he wished to change his testimony was "inaudible." No assertion is made in the further record or briefs on appeal that any explanation was in fact provided.

substantial evidence is also without merit. As petitioner did not dispute the evidence of the citation nor offer any explanation, such as a towing receipt or report of theft, the examiner could logically conclude that either petitioner or someone with his permission had driven the vehicle to that location while it was uninsured. We reject petitioner's claim that this evidence does not reasonably support the inference that the vehicle had been operated in violation of the statute. *See Jones v. District of Columbia Hackers' License Appeal Board*, 455 A.2d 896, 897 (D.C.1983) (substantial evidence test). Therefore some period of suspension was warranted.

### III

Petitioner asserts that the one year suspension was not authorized by the applicable regulations. Petitioner correctly notes that while D.C. Code § 35–2103(d)(2)(A) does not establish a limit on the length of a suspension, under 18 D.C. M.R. § 306.1 (1983), the Board's authority to order a suspension for violation of the Compulsory/No-Fault Motor Vehicle Insurance Act is normally limited to ninety days.[3] The Board contends, however, that under 18 D.C.M.R. § 310, it can in circumstances such as this case extend a suspension beyond the limit of § 306.1. Section 310 provides that a suspension or revocation order may be "modified" to allow the issuance of limited occupational licenses. Section 310.2 through 310.5 set forth the grounds and proof required of an applicant for this type of license. Section 310.6 then provides:

> When an occupational license is issued, the period of suspension or revocation may be increased over that of the original suspension or revocation period to the extent that, in the judgment of the examiner, the increase is justified to carry out the intent under this title of protecting the public interest in safe driving and of improving the driving habits of applicants for licenses.

Clearly, § 310 contemplates the imposition of a term of suspension within the 90–day limit of § 306.1 and then a request for an occupational license by the suspended or revoked operator or owner. In this case, however, petitioner never requested an occupational license. Rather, it appears that when during the course of the hearing, the examiner heard testimony that petitioner needed a license for employment,[4] she assumed that he would seek an occupational license if she imposed the maximum 90–day suspension.[5] Thus, at the conclusion of the hearing, she apparently, on her own initiative, invoked § 310.6, stating that petitioner could request a restricted license and also, in effect, exercising authority to extend the suspension to one year.[6]

On appeal, the Board now contends that once the examiner announced her intention to permit petitioner to apply for an occupational license, she could then extend the suspension under § 310.6. While we normally defer to an agency's reading of its regulations, we cannot sanction an erroneous interpretation that is contrary to the plain language. *Ahmed v. District of Columbia Hackers' License Appeal Board*, 501 A.2d 415, 417 (D.C. 1985). In this case, no legitimate interpretation of § 310 can be constructed to encompass the actions of this examiner. A plain reading of § 310 in its entirety indicates that the extension provision of § 310.6 may only be applied after the operator or owner applies for an occupational license and such a license is in fact

---

**3.** Section 306.1 reads:
 The suspension shall be from two (2) to ninety (90) days, at the discretion of the Director, based on the seriousness of the case.

**4.** At the beginning of the hearing, the examiner asked petitioner why he needed a driver's permit, to which he responded, "... my means of living."

**5.** Petitioner does not challenge the discretion of the examiner to impose the maximum 90–day suspension.

**6.** It is not clear under what authority the examiner or the Board purported to act at the time in imposing the one-year suspension. Neither at the hearing nor in the written decision did the examiner refer to § 310.6. § 310.6 was not mentioned in the Board's summary affirmance; it was cited for the first time on this appeal as the justification for the examiner's imposition of a suspension in excess of 90 days.

issued. The requirement that the period of suspension may be increased only after an occupational license has been requested protects the choice of a potential applicant for an occupational license to elect to suffer the burden of at most a 90–day suspension[7] rather than request an occupational license and risk a longer suspension bounded only by the discretion of the examiner. In this case, the examiner violated the dictates of § 310 and deprived petitioner that choice.[8]

Therefore, at the conclusion of the hearing in this case, the examiner only had authority to impose a suspension under § 306.1 limited to 90 days. The next problem, however, is to determine the appropriate remedy. The record is unclear as to how long petitioner's driving privileges were entirely suspended and how long he held the limited occupational license.[9] While the former period would seem to be fully credited against any lawfully imposed suspension period, no argument has been presented to us as to the proper credit of the latter period when, without knowledge of his alternative option, he held a limited occupational license or how this latter period of partial suspension might bear on the appropriate period of suspension to be now imposed. Therefore, we remand this case to the Board for imposition of a lawful and appropriate term of suspension, and a determination of the proper credit to be given against such a term.

*So ordered.*

---

7. A suspended operator might use accumulated vacation time, seek a change in job responsibilities or car-pool rather than lose the privilege of personal use of his operator's license for a substantially longer period.

8. However, of course, the examiner may ask the operator or owner at the suspension hearing if he or she intends to apply for an occupational permit after the examiner announces the term of a suspension or revocation and, if the applicant requests, make a determination of the applicant's eligibility.

9. The hearing before the examiner concluded on September 25, 1985, and the suspension took effect "forthwith." Petitioner appealed to the

Board on October 15, 1985, which announced its decision on February 18, 1986. The petition for review by this court was filed on March 27, 1986. The government's brief advises us as follows: "We understand that an occupational permit was issued to Mr. Carpenter subsequent to the hearing examiner's decision, but that, once he noted his appeal with this court, the occupational permit was rescinded and all his driving privileges were restored pending disposition of this appeal." However, the fact that petitioner was issued an occupational permit does not moot out the fact that he was deprived of his choice to take a maximum 90–day suspension and forego an occupational license.