Michael A. **TAPSCOTT**, Plaintiff,

v.

**DAIRYLAND INSURANCE COMPANY**, Defendant.

**Civ. A. No. 87–0416–OG.**

United States District Court, District of Columbia.

Nov. 9, 1987.

As Corrected Jan. 29, 1988.

**612**

Arnold Hawkins, Baltimore, Md., Frazier Walton, Washington, D.C., for plaintiff.

Joseph Pitterich, Chevy Chase, Md., for defendant.

## MEMORANDUM

GASCH, District Judge.

On August 31, 1985, plaintiff and his motorcycle collided with an uninsured motorist in Hyattsville, Maryland. As a consequence of this accident plaintiff suffered severe injuries that required extensive medical treatment and rehabilitation. Defendant is the carrier of an insurance policy issued for plaintiff's motorcycle in March 1984. Pursuant to the "Personal Injury Protection" endorsement to that policy, defendant paid to plaintiff $39,487.52 for his medical expenses and $9,085.52 for his lost wages. In addition, defendant paid $10,000 to plaintiff as uninsured motorist benefits.

Subsequent to these payments, defendant discovered that Prudential Insurance Co. had paid plaintiff's medical expenses under a health and hospitalization policy provided by plaintiff's employer. Plaintiff admits that Prudential made such payments and that not all of the $39,487.52 paid by defendant was used to pay medical expenses. Consequently, defendant has refused to make further payments under the motorcycle insurance policy and demands that plaintiff reimburse to defendant the entire portion of the $39,487.52 that was not used for medical expenses.

In the course of reviewing plaintiff's policy after the above payments were made, defendant also discovered that plaintiff had

never paid any premiums for uninsured motorist protection.[1] Consistent with this discovery, defendant notes that plaintiff's motorcycle insurance application lists a premium for "Liability Only" and not for "Uninsured Motorists." However, in the last scene of this comedy of errors, defendant noticed that plaintiff had not signed the "Uninsured Motorists Coverage Rejection Statement" in his application for motorcycle insurance. In light of these facts, defendant also claims that plaintiff must disgorge the $10,000 paid to him as uninsured motorists benefits.

The foregoing facts are undisputed, and neither party has filed a statement of disputed factual issues as contemplated by Local Rule 108(h). A review of the parties' briefs on these motions, however, reveals that there is a factual dispute as to whether defendant expressly offered or explained uninsured motorist protection to plaintiff. Plaintiff claims that defendant did neither. Moreover, plaintiff reports a conversation with an unidentified agent of defendant in which the agent allegedly admitted that uninsured benefits were owed to plaintiff because he did not sign the Rejection Statement. Defendant neither admits nor denies these allegations but merely contends that whether it offered or explained the coverage is completely irrelevant.

### The Parties' Arguments

In its Motion for Partial Summary Judgment, defendant argues that Personal Injury Protection ("PIP") coverage under the District of Columbia No-Fault Insurance Act ("No-Fault Act"), D.C.Code Ann. § 35–2104 (Supp.1987), may be used only to pay medical and rehabilitation expenses, lost wages, and funeral expenses. Defendant insists that it is entitled to be reimbursed by plaintiff for the portion of the PIP medical benefits that plaintiff admits he did not use for the designated purpose. To permit plaintiff a double recovery of medical expenses, argues defendant, is contrary to the District Council's goal in establishing a no-fault insurance system. If the

---

1. Plaintiff had purchased that coverage only in connection with his automobile insurance policy which is also carried by defendant.

Council had intended to allow double recovery of such expenses, it would have expressly provided for them.

Plaintiff responds that the Council's intent to allow double recovery for medical expenses under PIP and a private health insurance plan is clear from the provisions of the No-Fault Act. Since the Act expressly requires that PIP benefits be reduced by any amounts recovered from certain other insurance programs, not including private health insurance, *Id.* § 35–2110 (b) (Supp.1985), plaintiff argues that the Council obviously intended to allow double recovery in all other circumstances. Further, plaintiff infers from a 1986 amendment to the No-Fault Act, D.C.Law 6–96, § 2(e), 32 D.C.Reg. 7245 (1986) (codified at D.C.Code Ann. § 35–2106(g) (Supp.1987)), which absolutely precludes double recovery of PIP expenses, that no amendment would have been necessary if double recovery were not previously permissible.

As to the uninsured motorist benefits, defendant simply contends that the payment was erroneous. Since plaintiff did not pay premiums for the coverage, he was not entitled to receive the benefits and, therefore, defendant argues that it should be reimbursed for the full $10,000. Plaintiff insists that under the No-Fault Act defendant was required to offer uninsured motorist protection, that it failed to do so, and that the coverage should be implied as a matter of law into the policy. Alternatively, plaintiff argues that his failure to sign the "Uninsured Motorists Coverage Rejection Statement" constitutes acceptance of the coverage. Guarding against the Court's rejection of these two legal arguments, plaintiff substitutes the Rule 108(h) statement with a single paragraph in his brief urging that his entitlement to the benefits should not be decided on summary

judgment because there are genuine factual issues as to whether the coverage was offered or explained to him and whether he accepted or rejected the coverage.

## DISCUSSION

Last year this Court "set sail upon the 'uncharted waters' of the District of Columbia no-fault law." *See Johnson v. Cumis Insurance Society, Inc.*, 624 F.Supp. 1170, 1172 (D.D.C.1986) (Gasch, J.). Since that time the local courts have done little exploration of those waters.[2] Thus, this Court once again finds itself cast upon these waters asked to chart a course without the aid of local decisions. The task is made more difficult by the fog that settles over legal waters in the absence of useful or accessible legislative history.[3]

The Court's task is made no easier by the parties' briefs. Neither plaintiff nor defendant offers a consistent or well-supported interpretation of the No-Fault Act. Indeed, defendant's arguments as to double recovery of PIP benefits and plaintiff's right to uninsured motorist benefits are contradictory. In several instances, the parties read the Act to impose certain requirements but do not cite any provision of the Act in support of that interpretation.

*Were Motorcycles Subject to the Provisions of the No-Fault Insurance Act at the Time of Plaintiff's Accident?*

■ Before considering the issues expressly raised by the parties in these cross-motions for summary judgment, the Court must first address a perplexing definitional ambiguity in the No–Fault Act. *See Atwell v. Merit Systems Protection Board,* 670 F.2d 272, 286 (D.C.Cir.1981) (court must reconcile contradictory statutory language with legislative purpose). Two provisions of section 35–2102 are involved:

---

**2.** *See Carpenter v. District of Columbia Traffic Adjudication Appeal Board,* 530 A.2d 680 (D.C. 1987) (suspension of driver's license for failure to obtain insurance); *Makanju v. Saunders,* 519 A.2d 703 (D.C.1987) (applying § 35–2105 which bars civil suits for injuries compensable under No-Fault Act); *Johnson v. Collins,* 516 A.2d 196 (D.C.1986) (same).

**3.** While there is an abundance of legislative history regarding the evils to be solved by the No-Fault Act, there is little legislative material available regarding recent amendments to the Act. The majority of that material consists of constituent letters, and the Council hearings on the amendments have yet to be transcribed from audio tape.

(16) The term "motorcycle" means any *motor vehicle* having either a tandem arrangement of 2 wheels or a tricyclic arrangement of 3 wheels and having a seat or saddle for the use of the operator.

. . . .

(17) The term "motor vehicle" means any device propelled by an internal-combustion engine, electricity, or steam. The term "motor vehicle" *does not include a motorcycle* . . . .

(Emphasis added.)

Simply put, the definitional question is whether a "motorcycle" is or is not a "motor vehicle." Subsection (17) states that the answer is no; yet, subsection (16) defines a "motorcycle" as "any motor vehicle" the wheels of which are arranged in a certain manner. In resolving this definitional recursion, the Court notes first that the provisions of the No-Fault Act that require a motorist to obtain PIP coverage (as well as uninsured motorist coverage) use the term "motor vehicle" exclusively. Thus, if a motorcycle is not a motor vehicle, insurance coverage of a motorcycle would not be governed by the Act.

Since the plain meaning of the language creates the definitional conflict, the Court must look beyond the language to the purpose of the Act. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 735–36, 105 S.Ct. 1598, 1603, 84 L.Ed.2d 643 (1985); *Department of Defense v. Federal Labor Relations Authority*, 659 F.2d 1140, 1160 (D.C.Cir.1981). The stated purpose of the Act is "to provide adequate protection for victims who are injured in the District or who are injured while riding in motor vehicles registered or operated in the District." D.C.Code Ann. § 35–2101(b) (Supp.

1985). One finding that motivated the D.C. Council to adopt a no-fault system was that "[m]otorists, motor vehicle passengers, and pedestrians in the District are not adequately protected, by current law and practice, from the consequences of motor vehicle accidents." *Id.* § 35–2101(a)(1). There is no reason, obvious or subtle, to believe that the Council would be less concerned for the victims or consequences of motorcycle accidents. *See Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 106 (D.C.Cir.1976) ("plain meaning doctrine has always been considered subservient to a truly discernible legislative purpose").

This conclusion finds support in the only susbstantive section of the No-Fault Act to expressly address motorcycles. Section 35–2106(a)(3), which was repealed by D.C.Law 6–96 in 1986, commanded that "[a]n insurer . . . shall not refuse to sell or offer to sell personal injury protection insurance, and any liability policies described in this section, to the owner of any motorcycle." No similar provision appeared for "motor vehicles," but sections 35–2103(a) and 35–2104 appear to require that insurers offer PIP coverage with any "motor vehicle" policy.[4]

Contrary reasonable interpretations of this distinction are possible. Arguably, section 35–2106(a)(3) may be construed to mean that insurers need only offer to motorcyclists PIP and other liability coverages[5] required by section 35–2106 and that motorcyclists may elect whether to purchase such coverage. Such an interpretation would relieve motorcyclists of the mandatory insurance requirements of the Act. A more plausible understanding of the section is that the D.C. Council feared that

---

**4.** Section 35–2104(a) states:

*In general*—An applicable insurer shall provide all of the benefits set forth·in this chapter, for personal injury protection, property damage liability protection, and uninsured motorist protection, for each person covered by insurance for any injury sustained or any property damage liability incurred by that person as a result of an accident in the District or arising out of the maintenance or use of a motor vehicle registered in the District or in any state.

**5.** The term "liability policies" is not defined in the statute, and it is unclear whether the word "liability" is intended to restrict the scope of section 35–2106(a)(3) to PIP and "Out-of-state liability coverage," required by section 35–2106(c), or to encompass all coverages required by section 35–2106, which includes uninsured motorist coverage. In either case, the distinction is moot if "motor vehicles" includes "motorcycles" for the purposes of required insurance coverage under the No-Fault Act.

insurers would refuse to offer insurance policies to motorcyclists in the District of Columbia—presumably because of the greater risk of serious injury in motorcycle accidents—and that the section is merely intended to preclude such a result.

This conclusion is buttressed by amendments made to the No-Fault Act by D.C.Law 6–96 in 1986. First, in section 35–2102(17) the word "motorcycle" was stricken from the phrase describing devices not included within the definition of "motor vehicle." Secondly, section 35–2106(a)(3) was repealed and replaced by section 35–2106(a)(1)(D) which requires insurers to offer certain mandatory types of coverage but which makes PIP coverage optional. Again, the proper interpretation of these amendments is not certain without the aid of legislative history and conflicting interpretations are possible. However, it seems more reasonable that the D.C. Council simply recognized the circularity of the definition of motorcycle and motor vehicle, *Symons v. Chrysler Corporation Loan Guarantee Board*, 670 F.2d 238, 242 (D.C.Cir. 1981) (when legislative purpose is evident, court may correct mistakes in draftsmanship); *Citizens to Save Spencer County v. EPA*, 600 F.2d 844, 871–72 (D.C.Cir.1979) ("in legislative affairs, allowance must be made for human error and inadvertence"), and that expressly requiring that PIP coverage be offered to motorcyclists was no longer necessary since the Act would now expressly require that the offer be made to all applicants for insurance. *See United States v. Montgomery County*, 761 F.2d 998, 1003 (4th Cir.1985) (amendment does not necessarily indicate change in substance of law); *Callejas v. McMahon*, 750 F.2d 729, 731 (9th Cir.1985) (amendment may be clarification of existing law).

In sum, as this Court stated in *Johnson*, in the absence of reported case law that "would serve to guide this Court's interpretation of the statute ... [t]he Court ... must look to the language and purpose of the statute to determine its proper con-struction." 624 F.Supp. at 1173; *see Suburban Transit Corp. v. Interstate Commerce Commission*, 784 F.2d 1129, 1130 (D.C.Cir.1986). Applying this principle of interpretation to the present case, the only reasonable interpretation of the No–Fault Act as it existed in August 1985 is that motorcycles are to be treated as motor vehicles and, therefore, are subject to the mandatory coverage provisions of the Act.[6] The Court finds ample evidence to rebut the presumption that the 1986 amendments to section 35–2102 effected a change in, rather than confirmation of, the existing law. The important consequences of this reading of the Act are that the PIP coverage in plaintiff's policy is governed by the Act and that plaintiff was required to carry and defendant was required to offer uninsured motorist protection. *See* D.C.Code Ann. §§ 35–2103(a), 35–2104(a) & 34–2106(f)(2).

*Plaintiff Is Permitted Double Recovery of Medical Expenses Payable Under His PIP Coverage*

■ The Court's task in determining whether plaintiff is entitled to double recovery for his medical expenses under his PIP coverage and the health insurance provided by his employer is purely one of statutory interpretation. The primary reference in such a determination is the plain language of the statute, *Florida Power*, 470 U.S. at 735–36, 105 S.Ct. at 1603; *Suburban Transit*, 784 F.2d at 1130, but the Court must also be guided by the District Council's purposes in adopting a no-fault insurance system.

At the time of plaintiff's accident, August 1985, PIP coverage included benefits for medical and rehabilitation expenses, lost wages, and funeral expenses. Those benefits were to be reduced, however, by any benefits received under "(1) [s]ocial security ...; (2) worker's compensation; (3) temporary nonoccupational disability insurance ... required by a state or the District government; and (4) any govern-

---

6. It is worth noting that defendant does not contend that motorcycles are not covered by the PIP provisions of the Act; defendant notes the ambiguity of sections 35–2102(16) & (17) only in discussing the uninsured motorist benefits. The distinction that defendant attempts to draw is imperceptible.

ment program." D.C.Code Ann. § 35–2110 (b) (Supp.1985). Thus, section 2110(b) precluded double recovery under PIP and certain other health insurance programs. The plain language of the section indicates that double recovery under PIP and private health and hospitalization insurance was not barred.[7] *See Andrus v. Glover Construction Co.,* 446 U.S. 608, 616, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980) (item omitted from list of similar items can only mean legislature intended to exclude that item from statute).

This interpretation of the Act is buttressed by one of the many changes made to the Act by D.C.Law 6–96 in March 1986. Under section 35–2106(g), added by that Law:

> A victim is prohibited from claiming personal injury protection benefits under this chapter, other than to compensate for any deductible, if the victim is eligible for compensation for the loss covered by personal injury protection from another insurer or *another insurance coverage,* unless the victim has exhausted benefits offered by the insurer or insurance coverage.

(Emphasis added.) Law 6–96 also repealed subsections (1) and (4) of section 35–2110(b). Without legislative history, the reason for these amendments may be ascertained only by application of established rules of statutory interpretation. It seems clear that section 35–2106(g) would not have been added if the existing law precluded double recovery. The changes to section 35–2110(b) merely avoid redundant preclusion of double recovery under PIP and other insurance programs.[8]

Rejecting this implication by omission, defendant argues that double recovery

must not be permitted unless expressly authorized by the Act. Defendant characterizes the amendments made by Law 6–96 as merely confirming that double recovery is not permitted by the Act. This interpretation of the amendments contradicts the presumption that, absent clear evidence to the contrary, legislative action effects a change in, not a confirmation of, existing law.

Interpreting similar provisions of the no-fault laws of their own states, several courts have held that double recovery is permitted unless barred by statute. *See American Risk Assurance Co. v. Benrube,* 407 So.2d 993 (Fla.Dist.Ct.App.1982); *Wallace v. Tri-State Insurance Co.,* 302 N.W.2d 337 (Minn.1980); *Steppling v. Pennsylvania Manufacturers' Association Insurance Co.,* 328 Pa.Super. 419, 477 A.2d 515 (1984); *cf. McKenna v. County of Nassau,* 75 A.D.2d 815, 427 N.Y.S.2d 640 (1980) (police officer received full salary pursuant to local law and collected lost wages under no-fault). In each of these cases, the no-fault law precluded recovery of PIP benefits if benefits for the same expense had already been paid under certain enumerated types of insurance coverage. *E.g., American Risk,* 407 So.2d at 994 (no double recovery of medicaid benefits); *Wallace,* 302 N.W.2d at 339 (no double recovery of social security or worker's compensation benefits). These courts permitted double recovery because the non-PIP insurance coverage was not among the types of coverage for which the no-fault statute specifically barred double recovery. These cases squarely support the interpretation of the D.C. No-Fault Act offered above.

In addition to its argument on the proper interpretation of the language of the No-

---

7. The language of defendant's PIP endorsement to the motorcycle policy is virtually identical to the statute. The policy also states that "[n]o person may recover duplicate Personal Injury Protection benefits for the same element of loss." Defendant insists that this language bars double recovery, even if the statute does not. The error in this argument is obvious: plaintiff has recovered only once under PIP coverage. The benefits paid by Prudential were pursuant to a health and hospitalization policy, not an automobile policy.

8. The Court notes that Law 6–96 did not repeal subsections (2) and (3) of section 35–2110(b). Again, the absence of legislative history renders any explanation purely speculative, but one explanation may be that the D.C. Council did not consider worker's compensation or temporary nonoccupation disability to be "insurance coverage" as used in section 35–2106(g). The definitional section of the No-Fault Act does not define "insurance coverage."

Fault Act, defendant contends that the purpose of the Act is contravened by permitting double recovery. While the Act's primary goal was to insure adequate compensation of accident victims, D.C.Code Ann. § 35–2101(b), defendant insists that the D.C. Council intended to achieve this goal at the lowest possible cost to the consumer. *See id.* § 35–2101(a)(3) (better protection is available at lower cost than currently charged). Permitting double recovery, argues defendant, unnecessarily increases premiums by requiring two insurers to pay for the same insured expense. Defendant omits to add that barring double recovery also allows an insurer to avoid distributing benefits for which a premium was paid. Surely, if the intent of the legislature could be discerned, it would be to permit double recovery by an accident victim rather than allow an insurer to enjoy the windfall of receiving premiums while avoiding the attendant risk. *See Wallace*, 302 N.W.2d at 339 (insurer could have prevented double recovery by reducing premium as permitted by statute).[9]

In sum, the language of the No-Fault Act must be read to permit double recovery. Recent amendments to the Act indicate that double recovery was permitted at the time of plaintiff's accident. Moreover, if a windfall is to be had, it should be plaintiff's. Plaintiff is entitled to summary judgment on the issue of double recovery of PIP benefits and may retain the benefits already paid by defendant under PIP and continue to receive such benefits up to the policy limits.

*Plaintiff Is Entitled to Recover Uninsured Motorist Benefits*

■ Unlike the foregoing discussion of double recovery, plaintiff's right to uninsured motorist benefits does not involve the Court in probing the minds of D.C. Councilmembers. Instead, the Court must determine whether the circumstances surrounding plaintiff's application for motorcycle insurance and the application itself permit plaintiff to recover uninsured motorist benefits. As noted previously, plaintiff's application for motorcycle insurance contained a conspicuous box entitled "Uninsured Motorists Coverage Rejection Statement." The box also contained the following statement: "I have had Uninsured Motorists Coverage explained to me and fully understand it. I hereby reject such coverage and understand that my policy will not contain this coverage when issued or renewed." Below the statement there is a space for the date and applicant's signature. While the date is indicated (March 19, 1984), plaintiff's signature does not appear in the space provided.

Plaintiff contends that despite the absence of his signature, he is entitled to uninsured motorist benefits because the law required defendant to offer such coverage, defendant failed to offer it, and, therefore, the coverage must be implied into the policy at the minimum level required by law—$10,000.[10] Defendant denies that it was required to offer such insurance. Regardless of whether it made such an offer, defendant argues that since plaintiff never paid premiums for uninsured motorist protection, he is not entitled to benefits thereunder.

---

**9.** Defendant cites several cases in which double recovery was denied and urges the Court to adopt the reasoning of these cases. *See Lewis v. Transamerica Insurance Corp.,* 160 Mich.App. 413, 408 N.W.2d 458 (1987); *Kiefer v. General Casualty Co.,* 381 N.W.2d 205 (N.D.1986). In these cases, double recovery was denied because the basic health insurer had coordinated benefits with the no-fault insurer. These cases are inapposite; Prudential has not coordinated with defendant.

**10.** Plaintiff also offers the unconvincing argument that he is entitled to the uninsured motorist benefits by virtue of the policy on his car which includes such coverage and is carried by

defendant. Plaintiff apparently believes that it is he, not the vehicle, that is being insured. Were that the case, the type, model, or age of the vehicle would have no bearing on insurance premiums; yet these factors undoubtedly affect premiums. Were that the case, the registrant of a motor vehicle who had no license to drive would need no insurance; yet a motor vehicle cannot be registered in the District of Columbia without insurance. D.C.Code Ann. § 35–2103 (d) (Supp.1985). If plaintiff is permitted to retain the uninsured motorist benefits, it must be because such coverage exists, whether implied or express, under his motorcycle policy.

At the time of plaintiff's accident, section 35–2106(f)(2) provided:

> Each insurer selling motor vehicle insurance in the District with respect to any motor vehicle registered or principally garaged in the District *shall include* coverage for bodily injury or death in [the] amount[ ] of $10,000 per person injured in any 1 accident ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.

(Emphasis added.) The first portion of this opinion navigated the Court around the first obstacle presented by this section—whether a "motorcycle" is a "motor vehicle"—and concluded that the purpose and language of the Act are more sensibly understood to include motorcycles as motor vehicles. Anticipating this conclusion, the plaintiff has characterized the remaining issue as whether defendant offered and explained uninsured motorist protection. Plaintiff, to his advantage, is incorrect.

Section 35–2106(f)(2) requires that every insurance policy written for a motor vehicle registered in the District of Columbia include uninsured motorist protection of at least $10,000. The insurer has no choice but to include the coverage in every policy, and the insured has no choice but to purchase that coverage. *See* D.C.Code Ann. § 35–2103(a) (1985). Thus, the rejection statement in the insurance application is entirely irrelevant. Moreover, plaintiff did not sign the statement. Even if plaintiff had signed the statement, the Court could not enforce it because waiver of uninsured motorist protection is not permitted under section 35–2106(f)(2).

Defendant's only remaining argument is that plaintiff never paid premiums for the uninsured motorist protection. Defendant would have the Court place the onus of this omission on plaintiff; defendant implies that plaintiff had a duty to inquire about uninsured motorist protection and further inquire why he was not being charged a premium for such protection. Such should not be the burden of the insured. Instead, it is the insurer who must explain uninsured motorist protection and ensure that the customer purchases the protection. The Court should not punish the plaintiff for the administrative or accounting inadequacies of defendant.

There is no factual issue to be determined with respect to plaintiff's entitlement to uninsured motorist benefits. The No-Fault Act requires that such coverage be included in every policy, and defendant's failure to assess a premium for such coverage is its burden to bear. The minimum amount of uninsured motorist protection required by section 35–2106(f)(2)—$10,000—must be inserted as a matter of law into plaintiff's motorcycle insurance policy. *See American Universal Insurance Co. v. Russell,* 490 A.2d 60 (R.I.1985) (law required insurer to offer uninsured coverage and its failure to do so required that minimum coverage be implied). Plaintiff is entitled to summary judgment on the issue of uninsured motorist coverage. However, defendant is entitled to reimbursement for the premiums that plaintiff would have paid from March 19, 1984 to August 31, 1985 if defendant had properly processed plaintiff's application and managed his account.

## CONCLUSION

Despite the uncertainty regarding the definitions of "motorcycle" and "motor vehicle," the more reasonable interpretation of the No-Fault Act as it existed at the time of plaintiff's accident is that a motorcycle is a motor vehicle. Further, delving into the minds of D.C. Councilmembers—a dangerous and not certainly fruitful task—suggests that double recovery of medical expenses and lost wages under personal injury protection coverage and private health and hospitalization insurance is permitted by the Act. Finally and most clearly, if a motorcycle is a motor vehicle, uninsured motorist protection is a required element of a motorcycle insurance policy, and plaintiff is entitled to the minimum amount of such protection required by law, offset by the premiums he should have paid.

## ORDER

Upon consideration of the cross-motions for partial summary judgment, the oppositions thereto, and the record herein, it is by the Court this 9th day of November, 1987

ORDERED that summary judgment be, and hereby is, granted for the plaintiff; and it is further

ORDERED that defendant's motion for partial summary judgment be, and hereby is, denied; and it is further

ORDERED that defendant continue to make payments under the personal injury protection coverage of plaintiff's motorcycle insurance policy up to the policy's limit of liability for all expenses documented as required by the policy regardless of payments made to plaintiff for those same expenses by any other health care insurer; and it is further

ORDERED that within 20 days defendant shall submit to the Court a statement of the total additional premium plaintiff would have paid for uninsured motorist coverage between March 19, 1984 and August 31, 1985; and it is further

ORDERED that upon submission of the aforementioned statement and approval of this Court, plaintiff shall pay the total additional premium to defendant.