**Nicholas NASAKA, Plaintiff,**

v.

**DATA ACCESS SYSTEMS, et al., Defendants.**

**Civ. A. No. 84–1277.**

United States District Court, District of Columbia.

Feb. 14, 1985.

Douglas R. Stevens, Washington, D.C., for plaintiff.

Christopher E. Hassle, Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

At issue before the Court is a novel claim requiring an interpretation of the District of Columbia Compulsory/No-Fault Motor Vehicle Insurance Act of 1982 ("D.C. No-Fault Law"), D.C. Law 4–155, D.C.Code § 35–2101, *et seq.* (1984 Supp.) Plaintiff claims that his status as a taxicab driver renders him exempt from the provisions of the D.C. No-Fault Law. Thus, plaintiff argues, he may proceed with this diversity action despite the No-Fault Law's limits on civil liability actions, which would otherwise bar his claims.

In brief, the complaint alleges that Mr. Nasaka, a cab driver, was injured when his vehicle was struck by the defendant's vehicle. Plaintiff further alleges that the sole cause of the collision was the negligence of the defendants.

In an ordinary situation, the plaintiff would seek recovery for his economic loss [1] under the provisions of the No-Fault Law. Under the terms of the law, compensation would be provided to Mr. Nasaka by the applicable insurer for his medical expenses and lost wages regardless of negligence or fault. D.C.Code § 35–2104. However, Mr. Nasaka could not recover in a civil liability action for non-economic loss, *see* D.C.Code § 35–2102(19), unless he fell within one of the limited exceptions set forth in Section 6 of the Act, D.C.Code § 35–2105.

The plaintiff argues that the above procedures and limitations are rendered inap-

---

**1.** Plaintiff alleges he incurred $668.00 in medi-    cal bills and lost seven weeks of work.

plicable by Section 12(e) of the Act which provides:

The Mayor shall exempt ... taxicabs from the provisions of this chapter (except the provisions of § 35–2109) unless the Mayor finds that such action is not necessary to preserve the economic strength of the taxicab industry.

D.C.Code § 35–2111(e). The Mayor has entered the order setting the statutory exemption into effect. Mayor's Order No. 82–223 (Dec. 30, 1982). Thus, according to plaintiff, he is "exempt" from the no-fault law and may file this suit despite the otherwise preclusive effect of Section 6. In order to evaluate the validity of this argument, the Court must look to the language, background and purpose of the D.C. No-Fault Law.

### The No-Fault Law

The stated purpose of the D.C. No-Fault Law is "to provide adequate protection for victims [of automobile accidents] who are injured in the District ...." The law attempts to achieve this purpose by providing "quick and adequate" compensation through mandatory automobile insurance, while minimizing time and expense by (virtually) eliminating common law tort claims. Thus, the D.C. No-Fault statute can, in essence, be broken down into its two concurrent and complementary elements.

First, the Act requires that insurance with a certain level of benefits, D.C.Code § 35–2104, must be obtained for every motor vehicle registered in the District. D.C. Code § 35–2103. The Act is deemed to be "no-fault" in the sense that the insurance will pay for any compensable loss regardless of negligence or fault. See D.C.Code § 35–2104(b). The Act also sets out a schedule of priorities to determine which insurer is liable to pay benefits to the vic-

tim of an automobile accident. D.C.Code § 35–2107.

Second, the Act has the effect of eliminating most civil claims for damages based on tort liability. D.C.Code § 35–2105. In theory, such claims are unnecessary—and inefficient—in light of the comprehensive coverage for economic loss provided under the Act. Pared to its essentials, the D.C. No-Fault Act, like those of other states, offers a trade-off between its two major components: accident victims give up the right to sue in exchange for certain, but limited,[2] compensation. See 4 R. Long, The Law of Liability Insurance § 27.01 (1981).

Plaintiff looks at the plain language of the statute and argues that because taxicabs are "exempt" from the "provisions of the act," he is not only exempt from the mandatory insurance requirement but also from the section eliminating his common law right to sue. Defendant suggests a more subtle analysis.

First, defendant suggests that even under plaintiff's "plain language" argument it is *taxicabs*—not *cab drivers*—who are "exempt" from the act. The difference is not merely semantic. Defendant points out that the mandatory insurance provision refers to "motor vehicle insurance," D.C. Code § 35–2103, and that the insurance requirement is enforced by requiring as a prerequisite to registration that "the insurance required by this chapter is in effect *with respect to that motor vehicle.*" D.C. Code § 35–2103(d)(1)(A). The language of the statute limiting civil actions for damages, on the other hand, refers to "persons." Thus in the lexicon of the no-fault statute, "motor vehicles"—such as taxicabs—carry insurance, but persons are precluded from filing civil claims. This dis-

---

**2.** The compensation is limited in the sense that only "personal injury protection," D.C.Code § 35–2102, is provided. Noneconomic loss—including pain and suffering, physical or mental impairment or other nonpecuniary loss—is not usually recoverable under the statute.

For the record, it should be noted that Judge Oliver Gasch of this Court recently held that the Act's elimination of the right to sue for non-eco-

nomic loss except in cases where the victim's medical expenses exceed $5,000 violates equal protection principles under the Fifth Amendment. *Eilleen Dimond, et al. v. District of Columbia, et al.,* No. 83–1938 (Dec. 7, 1984). The effect of this holding has not been briefed and will thus not affect the outcome of the instant case. *See supra* note 6.

tinction is consistent with defendant's assertion that the "taxicab" exemption refers only to the mandatory insurance requirement and not to the limitation on civil liability.

Second, the legislative history also supports this reading of the exemption. As defendant points out, the District of Columbia City Council Committee on Public Services and Consumer Affairs, which reported favorably on the No-Fault Act, stated in its report to the Council that the taxicab exemption "is based on the fact that taxicabs are already required to carry liability insurance as a condition of doing business in the District." *See* Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment at 2. Furthermore, the bulk of the testimony at the public hearing focused on whether the cost of no-fault insurance would be too great for the taxicab industry. *Id.* at 3. Plaintiff has pointed to no legislative history that would support his understanding of the exemption.

Third, plaintiff's reading of the Act is inconsistent with any arguably valid policy concerns of no-fault. Plaintiff has not attempted to articulate a rational basis for exempting taxicab drivers from the limitation on civil suits, and this Court does not believe such a basis exists. If one accepts the limitation of tort claims as the *quid pro quo* of the "automatic" personal injury protection, it is inconceivable that cab drivers, who are presumably entitled to the benefits of no-fault protection, would be released

from the burden of the Act's limitation on non-economic damages.[3]

In the alternative,[4] one could construe the "exemption" to allow taxicab drivers to bring civil claims but to exclude them from entitlement to personal injury benefits under the Act. Aside from any conflict with the language[5] of the Act, such a result would be inconsistent with the no-fault policy of providing quick and adequate compensation and eliminating the time-consuming and expensive litigation process. Whether or not one agrees with the policy, it is difficult to imagine why cab drivers would be treated as a favored—or disfavored—class with respect to compensation under the Act. Unlike the taxicab exemption from the mandatory insurance provisions, which is based upon a legislative judgment of economic necessity, the suggested cab drivers' exemption from the limitation on tort liability has no apparent rational basis.[6]

■ Finally, the decision of the Court on this issue is consistent with that of the Office of Insurance Superintendent of the District of Columbia. Letter from Acting Superintendent Marguerite C. Stokes to John A. King (July 16, 1984) (discussing taxicab exemption). The Superintendent's Office suggests that because personal injury benefits are available to taxicab drivers and the Act restricts civil liability actions "with respect to any injury as to which personal injury protection benefits are payable," D.C.Code § 35–2105(a), the taxicab exemption has been interpreted to apply

---

**3.** As noted, taxicabs are released from the burden of obtaining no-fault insurance because of the potential cost and consequent injury to the industry. However, this exemption does not disturb the balance of the system because benefits remain available for all accident victims including those without insurance, D.C.Code § 35–2107, unless the victim is in violation of the Act by failing to obtain the mandatory insurance. D.C.Code § 35–2106(e)(1).

**4.** Plaintiff is not quite clear on whether his reading of the exemption simply allows cabdrivers to claim no-fault benefits or whether this exemption from the civil claim restriction also renders him exempt from benefits.

**5.** The Act clearly states that "any victim" may recover benefits under the Act. D.C.Code §§ 35–2104(c), 35–2105(a).

**6.** Because the Court holds that the statute may not be interpreted as the plaintiff suggests, the Court will not reach the issue of whether such an interpretation would be so irrational as to violate due process or equal protection norms. However, the fact that plaintiff's interpretation might raise serious constitutional questions is a factor that weighs against plaintiff's position. *See United States Civil Service Com'n v. Nat'l Ass'n of Letter Carriers, AFL–CIO,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Palmore v. Superior Court of the District of Columbia,* 515 F.2d 1294 (D.C.Cir.1975).

only to the mandatory insurance requirements. Such an interpretation is not binding, of course, but it is entitled to considerable deference. *See e.g., Quern v. Mandley,* 436 U.S. 725, 98 S.Ct. 2068, 56 L.Ed.2d 658 (1978); *Moon v. United States Dept. of Labor,* 727 F.2d 1315 (D.C.Cir.1984).

■ Although there is no precedent on point in this circuit, the result reached here is indirectly supported by the case law of other jurisdictions. In cases involving a "motorcycle exemption" similar to the taxicab exemption, state courts have held that although the exemption relieves the motorcycle owner of purchasing no-fault insurance, such persons are nevertheless entitled to no-fault benefits and are therefore limited in bringing civil actions for damages. *See Underhill v. Safeco Ins. Co.,* 407 Mich. 175, 284 N.E.2d 463 (1979); *Braden v. Spencer,* 100 Mich.App. 523, 299 N.W.2d 65 (1980); *New York Transit Authority v. Smith,* 382 N.Y.S.2d 355, 52 A.D.2d 624 (1976). In summary, this Court holds that the "exemption" of taxicabs from the D.C. No-Fault Law applies only to the mandatory insurance provision, D.C. Code § 35–2103. The exemption does not prevent a taxicab owner or driver from claiming benefits under the No-Fault Law, nor does it entitle him to avoid the limitations on civil liability set forth in D.C.Code § 35–2105. In addition, it is apparent on the facts before the Court that plaintiff does not qualify for *any* of the exceptions to the restriction on civil liability suits, and he is therefore precluded from bringing this action.[7]

An appropriate Order will issue in accordance with the terms of this opinion.

---

7. Plaintiff raises two other issues in his opposition that are argued in such a perfunctory fashion that this Court need not reach them. Plaintiff devotes a total of seventy-eight words to eight separate constitutional issues potentially raised by the Act. In light of Judge Gasch's exhaustive exposition of many of those issues, *see fn. 2, supra,* and in light of the manner in which they were raised by plaintiff, the Court will treat that portion of plaintiff's opposition as frivolous and inappropriate for discussion.

Plaintiff also suggests that it is "not altogether clear that plaintiff's injuries are not permanent or that his bills will not exceed the threshold

limits of the Act." If any of the exceptions set forth in § 35–2105(b) were sufficiently "clear" for plaintiff to submit the appropriate opposition papers to the pending summary judgment motion, the Court is confident that the plaintiff would have done so in the six months since the motion was originally filed. In the absence of affidavits, a "statement of genuine issues," *see* Fed.R.Civ.P. 56(c) and Rules of the United States District Court for the District of Columbia 1–9(h), or other appropriate pleading, and on the undisputed facts, defendant is entitled to summary judgment.