Ivory L. COLEMAN, Jr., Appellant,

v.

CUMIS INSURANCE SOCIETY, INC.,
and Dairyland Insurance
Company, Appellees.

No. 88–175.

District of Columbia Court of Appeals.

Submitted Jan. 5, 1989.
Decided May 19, 1989.

James J.M. Vaughan and Brent E. Walthall were on the brief, for appellant.

Leonard C. Greenebaum, Harlan L. Weiss and Thomas C. Junker, Washington, D.C., were on the brief, for appellee Cumis Ins. Soc., Inc.

Melvin R. Wright, Rockville, Md., was on the brief, for appellee Dairyland Ins. Co.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and KERN, Senior Judge.

ROGERS, Chief Judge:

This appeal presents the question of whether the District of Columbia Compulsory/No–Fault Motor Vehicle Insurance Act of 1982 (No–Fault Act)[1] required motorcycles to be insured in 1984 as a precondition to recovery by the motorcyclist of statutory personal injury protection (PIP) benefits. We answer this question in the negative based on our examination of the legislative history of the No–Fault Act and a 1986 amendment which requires motorcycles to have such insurance. Accordingly, we hold that appellant Ivory L. Coleman, Jr., who appeals from a grant of summary judgment in favor of appellees, is eligible to recover PIP benefits[2] although he did not have motorcycle insurance at the time of the accident. We further hold that Dairyland Insurance Company, the insurer of the automobile involved in the 1984 accident, is liable to appellant for the PIP benefits and not Cumis Insurance Society since Cumis, the insurer of appellant's automobile, which was not involved in the accident, was entitled under the No–Fault Act to limit its liability for a non-resident's PIP coverage in the District to the insured vehicle.

## I

■ The trial court granted summary judgment to appellees on the basis of undisputed facts.[3] On February 26, 1984, appellant, a resident of Virginia, was in an accident in the District of Columbia involving his motorcycle and an automobile driven by Lucious Johnson. Appellant, who had no insurance coverage for his motorcycle, suffered personal injuries, lost wages and medical bills. He filed suit to recover PIP benefits under the No–Fault Act against Cumis Insurance Society (Cumis), the insurer of his 1972 Pontiac, which was registered in Virginia and not involved in the accident, and Dairyland Insurance Com-

---

1. D.C.Code § 35–2101 *et seq.* (1984 Supp.). We refer to the 1984 version of the No–Fault Act throughout the opinion, unless otherwise indicated, since the accident at issue occurred in 1984.

2. D.C.Code §§ 35–2103(a), (b), –2104; *Dimond v. District of Columbia,* 253 U.S.App.D.C. 111, 114, 792 F.2d 179, 182 (1986).

3. In reviewing the grant of summary judgment, this court conducts an independent review of the record, viewing the evidence in a light most favorable to the party opposing the motion. *Arneja v. Gildar,* 541 A.2d 621, 623 (D.C.1988) (citations omitted).

pany (Dairyland), the insurer of Lucious Johnson's automobile.

The two critical provisions of the No–Fault Act at issue concern the definitions of a motorcycle and a motor vehicle. At the time of the accident, the No–Fault Act provided that " 'motorcycle' means any motor vehicle having either a tandem arrangement of 2 wheels or a tricyclic arrangement of 3 wheels and having a seat or saddle for the use of the operator." D.C.Code § 35–2102(16). The term "motor vehicle" was defined to mean any device propelled by an internal combustion engine, electricity, or steam, other than a *motorcycle*. *Id.* § 35–2102(17). Other provisions of the No–Fault Act did not definitively instruct whether the mandated No–Fault insurance coverage was intended to include motorcycles so that a person who was injured while driving a motorcycle in the District of Columbia would be eligible to recover PIP benefits only if the victim had previously purchased such coverage. We hold, based on the stated purpose of the No–Fault Act and a 1986 amendment which eliminated the exclusion of motorcycles in the definition of "motor vehicle," that the Council of the District of Columbia did not intend when it enacted the No–Fault Act in 1982 for motorcycles to be covered by the mandated insurance provisions, and hence that appellant is entitled to recover PIP benefits.[4]

### A.

D.C.Code § 35–2101(b) states that the purpose of the No–Fault Act is "to provide adequate protection for victims who are injured in the District *or* who are injured while riding in motor vehicles registered or operated in the District" (emphasis added). The No–Fault Act broadly defines a victim as an "individual who sustains injury as a result of an accident." D.C.Code § 35–2102(34). In support of the enact-

ment of the No–Fault Act, the D.C. Council found that motorists, motor vehicle passengers, and pedestrians in the District were inadequately protected under the tort law system from the consequences of motor vehicle accidents, and that they were unlikely to recover the amount of actual losses because of limitations on the amount of PIP benefits that could be recovered and the "time-consuming and expensive" tort liability system. D.C.Code § 35–2101(a). The Council also found that far greater protection to victims of motor vehicle accidents was available at lower prices, and that the purchase of this better insurance protection should be compulsory. *See id.*

To achieve its purpose, the No–Fault Act provides for quick recovery of basic compensation by eliminating the need for tort litigation. *See Nasaka v. Data Access Sys.*, 602 F.Supp. 761, 763 (D.D.C.1985). Section 35–2103(b) requires every non-resident owner of a motor vehicle operated in the District to maintain "insurance for payment of the benefits required by this chapter for personal injury protection, property damage liability protection, and uninsured motorist protection." PIP insurance covers compensable loss up to certain monetary limits set in the No–Fault Act regardless of negligence or fault. *See* D.C.Code § 35–2104; *Nasaka, supra,* 602 F.Supp. at 762. In exchange for this certain, but limited, compensation, the No–Fault Act eliminated most civil claims for damages based upon tort liability. *See* D.C.Code § 35–2105; *Johnson v. Collins,* 516 A.2d 196, 198 (D.C.1986); *Nasaka, supra,* 602 F.Supp. at 763 (quid pro quo of "automatic" personal injury protection). If PIP benefits are available to a person under the No–Fault Act, and none of the exceptions in § 35–2105(b) apply, then suit is barred under § 35–2105(a) and recovery is limited to PIP benefits.[5] *See Weeks v. Wimple,* 669 F.Supp. 499, 500 (D.D.C.1987).

**4.** *See generally Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753–54 (D.C.1983) (rules of statutory interpretation; proper to review legislative history even where words of statute have superficial clarity).

**5.** D.C.Code § 35–2105(b) lists six exceptions to the restriction on civil suits mandated by subsection (a) of this section. No party has asserted that any are applicable to the instant case.

■ Dairyland contends [6] that appellant is ineligible for PIP benefits because he failed to maintain for his motorcycle the insurance required by section 35–2106(e)(1).[7] Appellant responds that section 35–2106(e)(1) is inapplicable because motorcycles were excluded by section 35–2102(17) from the definition of a "motor vehicle" for which the No–Fault Act required insurance. Since the mandatory insurance provisions refer exclusively to motor vehicles, appellant contends that the D.C. Council must have intended to exempt motorcycles from these provisions. He further contends that injured motorcyclists are to be treated like pedestrians or any other uninsured victim under the No–Fault Act, and that he is, therefore, entitled to receive PIP benefits from either Cumis or Dairyland.

The No–Fault Act enacted in 1982 was the result of a lengthy process in which several versions of no-fault insurance were considered by the D.C. Council. Two earlier versions of the bill suggest that the Council did not intend to require insurers to offer mandatory uninsured or optional underinsured motorist coverage to people operating motorcycles, mopeds, or motorized bicycles. Thus, Bill 4–140, the "Compulsory Motor Vehicle Insurance Act of 1981," required "all automobile liability or motor vehicle liability insurance to include uninsured motorist coverage except while the insured was operating a motorcycle, moped, or motorized bicycle." [8] Commenting on this bill, the Chief of the Legislation and Opinions Section of the Office of the Corporation Counsel recommended that a sentence be added to the definition of "motor vehicle" to exclude motorcycles and motorized bicycles, "since this appears to be the intent of the bill as reflected in section 4(a)." [9] A later version of the bill required each insurance policy to offer optional underinsured motor vehicle coverage, "except for the operation of motorcycles, mopeds, or motorized bicycles." [10] The bill passed by the D.C. Council revised the entire section on required and optional insurance,[11] *and* excluded motorcycles from the definition of "motor vehicle." Earlier versions of the legislation suggest that the Council contemplated excluding motorcycles and motorized bicycles from some of the insurance requirements under consideration, and lend support to appellant's contention that in 1982 the Council intended to exclude motorcycles from the mandatory insurance requirements for motor vehicles.

In 1986 the Council amended the definition of "motor vehicle" so that it no longer excluded motorcycles. *See* D.C.Code § 35–2102(17) (1988 Repl.). The legislative history stated that the amendment was designed to "eliminate the exclusion of motorcycles under the definition motor vehicle, so that motorcycles are *now* required to carry the coverages under section 7 of the act." [12] While the action of a later Council

---

6. Cumis did not join this argument because it contends that, regardless of whether appellant as a motorcyclist is eligible for PIP benefits under the No–Fault Act, appellant as a non-resident of the District cannot recover under his automobile policy with Cumis for an accident which did not involve his automobile. See Part II, *infra.*

7. D.C.Code § 35–2106(e)(1) provides:
   (e) *Ineligibility for benefits.*—(1) No personal injury protection benefits shall be paid with respect to any victim if that victim:
   (A) Is, as of the date of the accident, the owner of a motor vehicle involved in the accident resulting in that victim's injury; and
   (B) Failed, as of the date of the accident, to provide and maintain insurance for payment of the benefits required by this chapter for personal injury protection.

8. Report of the Committee on Public Services and Consumer Affairs, Council of the District of Columbia, on Bill 4–140, February 16, 1982, Attachment 1 at Section 4(a).

9. Memorandum of Inez Smith Reid, Chief, Legislation & Opinions Section, Legal Counsel Division, to Barbara C. Washington, Assistant City Administrator for Intergovernmental Relations, February 2, 1982, at 2.

10. Report of the Committee on Transportation and Environmental Affairs, Council of the District of Columbia, on Bill 4–140, March 11, 1982, Attachment A at Section 4(d).

11. *See* D.C.Code § 35–2106.

12. Report of the Committee on Consumer and Regulatory Affairs, Council of the District of Columbia, on Bill 6–249, "Compulsory/No–Fault Motor Vehicle Insurance Act of 1982 Amendments Act of 1985," October 8, 1985, at 11 (emphasis added).

usually does not provide definitive evidence of the intent underlying the action of a former Council, *see McIntosh v. Washington,* 395 A.2d 744, 750 n. 12 (D.C.1978); *see also District of Columbia v. Schwerman Trucking Co.,* 327 A.2d 818, 823 (D.C. 1974), the fact that the 1986 amendment addressed the same subject, and the rationale for the amendment, lends some support for our view that in 1982 the Council intended to exclude motorcycles from the mandatory insurance provisions. *See McIntosh, supra,* 395 A.2d at 750 n. 12.

Our reading of the legislative history of the No–Fault Act and the 1986 amendment is consistent with the policy in other jurisdictions which exclude motorcycles from mandatory no-fault insurance requirements, either by specific reference or by excluding vehicles with less than four wheels from the definition of "motor vehicle" in their statutes.[13] The basis for the exclusion in these jurisdictions is that the cost of requiring mandatory coverage, and particularly PIP benefits, for motorcycles is prohibitive;[14] as one court noted, studies show that motorcyclists, while rarely at fault in motor vehicle accidents, often suffer more severe bodily injuries than automobile operators.[15] Although the reason for excluding motorcycles in the District's no-fault system is not clear from the legislative history, it is conceivable, based on the practice in other jurisdictions, that the D.C. Council had a similar concern. The 1986 amendment, including motorcycles in the definition of motor vehicles, is nonetheless consistent with the concern about high premium costs for motorcycles in light of the Council's replacement, for all motor vehicles, of mandatory PIP coverage with

optional PIP coverage, thus giving policyholders more control over the cost of their insurance packages. *See* D.C.Code §§ 35–2104, –2106(a)(1)(D) (1988 Repl.); Holden, *District of Columbia Survey: The 1985 Amendments to the District of Columbia's No–Fault Motor Vehicle Insurance Act of 1982: The Future of No–Fault Insurance in the District,* 36 CATH U.L. REV. 777, 786–88 (1986).

Appellant's contention that motorcycles were not covered by the mandatory insurance provisions, moreover, is supported by statutory conventions. The District of Columbia Code makes similar use of the phrase "does not include," or the like, to exclude a class of items. For example, in Title 40 of the District of Columbia Code, the term "motor vehicle" is defined "not [to] include road rollers, farm tractors, and battery-operated wheelchairs...." D.C. Code § 40–101(1) (1986 Repl.). *See also* §§ 40–111(2), –208, and –702 (1986 Repl.). Similarly, the definition of "motor vehicle" in the No–Fault Act plainly excludes the listed items from the term being defined.[16] Just as the D.C. Council did not intend for farm tractors to be subject to the registration requirements in Title 40 for motor vehicles, appellant argues that it follows that the Council did not intend for motorcycles to be subject to the mandatory insurance requirements of the No–Fault Act. While a drafting style is not conclusive evidence of legislative intent, we agree that it offers some support for, and certainly is not inconsistent with, our interpretation of the No–Fault Act. Accordingly, we hold that motorcycles were excluded from the

13. *See* 1 SCHERMER, AUTOMOBILE LIABILITY INSURANCE: NO-FAULT INSURANCE–UNINSURED MOTORISTS–COMPULSORY COVERAGE, § 1.03[1], 1–14–15 & n. 11 (1988).

14. *See id.* at 1–15; *Montgomery v. Daniels,* 38 N.Y.2d 41, 62, 378 N.Y.S.2d 1, 19, 340 N.E.2d 444 (1975) (rational basis for the exclusion of motorcycles from the definition of motor vehicle was evidence that premium costs to motorcyclists would have been prohibitively high); *Manzanares v. Bell,* 214 Kan. 589, 612–15, 522 P.2d 1291, 1310–11 (1974) (motorcycle accident likely to produce more serious personal injury to the motorcycle operator, and the financial

exposure for medical and hospital expenses, as well as loss of earnings, is much greater; hence the cost of PIP benefits would be substantially greater for a motorcyclist than for automobile owner).

15. *See Underhill v. Safeco Ins. Co.,* 407 Mich. 175, 187, 284 N.W.2d 463, 468 (1979).

16. Within the No–Fault Act, appellant points to other examples of this drafting style in the definition of "loss," § 35–2102(13), "maintenance or use," § 35–2102(14), and "taxicab," § 35–2102(31).

definition of motor vehicles prior to the 1986 amendment to the No–Fault Act.[17]

**B.**

The question remains whether a motorcyclist is ineligible to recover PIP benefits under the No–Fault Act since it does not necessarily follow that by exempting motorcycles from mandatory coverage, the D.C. Council also intended to preclude motorcyclists from receiving statutory benefits.[18] We find nothing in the No–Fault Act or its legislative history which suggests that motorcyclists are precluded from receiving statutory benefits, and the parties do not contend otherwise.[19] As noted, one of the purposes of the District's No–Fault Act is to compensate victims of accidents with no-fault benefits and relieve them of the burden of having to sue in tort. In two cases involving the exemption of taxicabs from the mandatory insurance provisions of the No–Fault Act,[20] taxicab operators were held to be eligible for statutory benefits, and thus precluded from suing in tort. *See Johnson, supra,* 516 A.2d 196; *Nasaka, supra,* 602 F.Supp. 761. The same rationale appears no less applicable to motorcyclists before the 1986 amendment to the No–Fault Act. *See Nasaka, supra,* 602 F.Supp. at 764 (drawing parallel between taxicab exemption in No–Fault Act and motorcycle exemption in no-fault statutes in other jurisdictions where motorcyclists are still entitled to no-fault benefits). Accordingly, we hold that appellant is eligible for PIP benefits.

**II**

The final question is which insurer, Cumis or Dairyland, is liable to appellant for the PIP benefits. Cumis contends, and we agree, that its obligations under the policy covering appellant's 1972 Pontiac are not invoked in appellant's suit for PIP benefits because appellant, a non-resident, was not operating his automobile in the District at the time of the accident. Dairyland, on the other hand, as the insurer of the auto-

---

**17.** A federal judge reached a contrary conclusion in *Tapscott v. Dairyland Ins. Co.,* 673 F.Supp. 611 (D.D.C.1987), citing a lack of legislative history and acknowledging that a contrary reasonable interpretation was possible. *Id.* at 615. This court is not bound by *Tapscott, M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971), and, with due respect, we do not find the reasoning persuasive. The judge conceded that the 1986 amendment created a presumption that a change, and not a clarification of the law, was effected. *Tapscott* at 615. The judge focused principally on D.C.Code § 35–2106(a)(3) ("[a]n insurer … shall not refuse to sell or offer to sell personal injury protection insurance, and any liability policies described in this section, to the owner of any motorcycle") and concluded the D.C. Council was concerned that insurers would refuse to offer insurance policies to motorcyclists who were required to purchase insurance under the No–Fault Act. When the No–Fault Act was amended in 1986 to include motorcycles, section 35–2106(a)(3) was repealed. The D.C. Council likely realized that the provision was redundant once motorcycles were included in the definition of motor vehicles and decided to replace it with § 35–2106(a)(1)(D) (1988 Repl.) ("[e]ach insurer selling motor vehicle insurance" to offer all applicants certain types of coverage).

**18.** *See, e.g., Underhill, supra,* 407 Mich. at 186–89, 284 N.W.2d at 468–69:

The same factors which support a legislative determination to exempt motorcycle owners from the obligation to maintain no-fault insurance coverage, thereby treating them differently from other motor vehicle owners, provide adequate rationale for the decision to permit motorcyclists, like bicyclists and pedestrians, to claim benefits when injured in accidents involving motor vehicles:

—The motorcycle-motor vehicle accident is much like the bicycle-motor vehicle accident. Motorcycles do comparatively little damage to motor vehicles and their operators. Motorcyclists are likely to suffer substantial injuries in accidents involving motor vehicles.

—Motorcyclists … are "rarely at fault in motor vehicle accidents" (citation omitted). *See also Braden v. Spencer,* 100 Mich.App. 523, 528, 299 N.W.2d 65, 68 (1980) (quoting *Underhill*); *New York City Transit Auth. v. Smith,* 52 A.D.2d 624, 625, 382 N.Y.S.2d 355, 356 ("The noninclusion of motorcycles as vehicles required to obtain insurance policies which pay for damage regardless of fault does not, by implication, concurrently preclude persons operating motorcycles who are injured in accidents involving covered vehicles from obtaining recovery under no-fault policies.").

**19.** *See also New York City Transit, supra,* 52 A.D.2d at 625, 382 N.Y.S.2d at 356 (if legislature desires such a preclusion, it should provide so explicitly).

**20.** *See* D.C.Code § 35–2111(e) (1985 Supp.).

mobile which was involved in the accident with appellant's motorcycle, is liable to appellant for the PIP benefits.

D.C.Code § 35–2107 (1984 Supp.) determines the priority of insurers responsible for paying PIP benefits. In appellant's case, reimbursement must come, first, from the insurer providing "required insurance" under which the victim is insured, or from the insurer providing required insurance with respect to any motor vehicle involved in the accident, if the victim is not an insured under any policy.[21] D.C.Code § 35–2103 (1984 Supp.) provides that "required insurance" for a non-resident operating a motor vehicle in the District is "insurance for payment of the benefits required by this chapter for personal injury protection, property damage liability protection, and uninsured motorist protection" while the motor vehicle is in the District. We interpret this section to mean that the required insurance for a non-resident must be linked to a motor vehicle operated in the District.[22] *See Johnson, supra,* 516 A.2d at 199 (insurance follows vehicle not person). Since a non-resident cannot recover from the insurer of the non-resident's motor vehicle if that motor vehicle is not involved in an accident in the District, appellant cannot recover from Cumis under § 35–2107(3).[23] Although accident victims are usually compensated by their own insurance company in a no-fault system, *see Dimond, supra,* 792 F.2d at 182, where the victim has no applicable insurance coverage, the No–Fault Act provides that the victim can be reimbursed by the insurer of the other vehicle involved in the accident. *See* D.C.Code § 35–2107(5). Dairyland, therefore, is liable for appellant's PIP benefits.

Accordingly, summary judgment in favor of Cumis is affirmed, summary judgment in favor of Dairyland is reversed, and denial of Coleman's motion for partial summary judgment against Dairyland is reversed.[24]

*Affirmed in part, reversed in part.*

---

21. *See* D.C.Code § 35–2107(3), (5).

22. No such link appears in section 35–2103(a) with respect to the required insurance that a resident of the District of Columbia must maintain.

23. Cumis argued in the trial court that its insurance policy on appellant's car included an out-of-state insurance endorsement that if another jurisdiction required insurance greater than that under its policy, the limits of Cumis' liability and the kinds of coverage afforded shall exist only with respect to the operation or use of a motor vehicle in such jurisdiction. Appellant did not dispute this, hence the trial judge was entitled to treat Cumis' representation in its statement of material facts as true for purposes of ruling on its motion for summary judgment. *See* Super.Ct.Civ.R. 12–I(k); *Dilbeck v. Murphy,* 502 A.2d 466, 469 (D.C.1985).

24. Dairyland's contention that Cumis is required to pay appellant's PIP benefits under D.C.Code § 35–2106(d) (1984 Supp.) because appellant is a beneficiary under a policy with Cumis, is without merit. The correct reading of this section makes PIP benefits payable by an insurer to a victim (1) if the accident occurred in the District, or (2) if the accident occurred in any state at a time when the victim (a) was a beneficiary under a personal injury protection policy, or (b) was an occupant of a car owned or registered by a beneficiary of a PIP policy. *See Weeks v. Wimple, supra,* 669 F.Supp. at 501. Since the accident in the instant case occurred in the District, the second part of this section is inapplicable, and it does not matter that appellant was a beneficiary under Cumis' policy.