*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CV-262

ANDREA LIU, APPELLANT,

v.

U.S. BANK NATIONAL ASSOCIATION, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CAR-6539-14)

(Hon. Ronna L. Beck, Motions Judge)

(Argued January 31, 2017                         Decided March 1, 2018)

*Robert C. Gill* for appellant.

*S. Mohsin Reza* for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*,[*] and GLICKMAN and THOMPSON, *Associate Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*:    In the District of Columbia, condominium associations are granted a "super-priority lien" over first mortgage lienholders, which permits an association to collect up to six months of unpaid

---

[*]    Chief Judge Blackburne-Rigsby was an Associate Judge at the time this case was argued.  Her status changed to Chief Judge on March 18, 2017.

assessments upon foreclosure on a condominium unit.[1]  In *Chase Plaza Condominium Ass'n v. JPMorgan Chase Bank, N.A.*, 98 A.3d 166, 172 (D.C. 2014), this court was asked to determine whether a condominium association's foreclosure on its super-priority lien could extinguish an otherwise first-priority deed of trust or mortgage when the proceeds of the foreclosure sale were insufficient to satisfy the deed of trust or mortgage.  We held in the affirmative— that "a condominium association is permitted to foreclose on [its] six-month [super-priority] lien and [to] distribute the proceeds from the foreclosure sale first to satisfy [its super-priority] lien and then to satisfy any remaining liens in order of lien priority." *Id.*  We clarified that in such circumstances "[a]ny liens [including a first mortgage or first deed of trust] that are unsatisfied by the foreclosure-sale proceeds are extinguished, and the foreclosure-sale purchaser acquires free and clear title." *Id.*

The present case requires this court to determine a similar issue.  We must decide whether, prior to the 2017 amendment to D.C. Code § 42-1903.13,[2] a

---

[1]  D.C. Code § 42-1903.13 (a)(2) (2012 Repl.).

[2]  Effective April 7, 2017, D.C. Code § 42-1903.13 was amended to add a provision requiring that the foreclosure sale notice expressly state whether the foreclosure sale is for the six-month priority lien and not subject to the first deed of

(continued…)

condominium association could choose to sell the condominium unit "subject to the first mortgage or first deed of trust" on the property, while at the same time enforcing its super-priority lien. We conclude that a condominium association could not foreclose on its super-priority lien while leaving the property subject to the unsatisfied balance of the first mortgage or first deed of trust—to find otherwise would contravene our holding in *Chase Plaza*. Accordingly, we reverse the trial court's order granting summary judgment to U.S. Bank, which concluded that a condominium could foreclose on its super-priority lien while leaving the underlying mortgage lien intact, and remand for further proceedings consistent with this opinion.

## I. Factual Background

On March 9, 2007, Jon Michael Lucas obtained a mortgage loan in the amount of $589,750 to finance his purchase of condominium unit 1003, located at 301 Massachusetts Avenue, N.W., in the Sonata Condominium complex. Mr. Lucas also executed a deed of trust and promissory note, which secured the loan on

---

(. . . continued)
trust, or for more than the six-month priority lien and subject to the first deed of trust. D.C. Code § 42-1903.13 (c)(4)(B)(ii).

the condominium. Mr. Lucas's mortgage loan was originally from Vanguard Mortgage and Title, Inc. ("VMT") and the deed of trust and note were executed in VMT's favor. The deed of trust was recorded in the land records of the District of Columbia. Mr. Lucas's mortgage loan was later assigned to U.S. Bank ("Bank"), which also took possession of the note.

In 2009, Mr. Lucas stopped paying both his monthly mortgage payments and his condominium assessments, the latter of which prompted the Sonata Condominium Unit Owners Association ("Sonata") to seek foreclosure on the condominium, pursuant to D.C. Code § 42-1903.13 (a)(2), which entitles condominium associations to a super-priority lien for the most recent six months of unpaid condominium assessments. Between 2011 and 2014, Sonata scheduled several foreclosure sales for the condominium, but the sales were all cancelled after the Bank paid Mr. Lucas's unpaid assessments. The Bank paid the assessments on Mr. Lucas's behalf in order to preserve its lien on the condominium. These payments were secured under Mr. Lucas's loan by the deed of trust.[3]

---

[3] The "Condominium Rider," which was signed by Mr. Lucas on March 9, 2007, and which supplemented the deed of trust, states that Mr. Lucas and his Lender agreed that "[i]f [Mr. Lucas] does not pay condominium dues and

(continued…)

On May 1, 2014, Mr. Lucas was in default for unpaid condominium assessments, prompting Sonata to file a "Notice of Foreclosure Sale of the Condominium Unit for Assessments Due" with the District's Recorder of Deeds. The notice stated that Mr. Lucas was in arrears to Sonata for $11,503.67.[4] Sonata sent the notice of the foreclosure sale to Mr. Lucas and all other interested parties, including the Bank; the notice stated that the foreclosure sale would not be held until thirty-one days past the date on which the notice was mailed, and that if the past due amounts were not paid in full by that time, the condominium would be sold at a public auction on June 4, 2014. On May 23, Sonata also sent the Bank a letter stating the amount that needed to be paid in order to stop the scheduled foreclosure sale.

---

(. . . continued)
assessments when due, then [the] Lender may pay them. Any amounts disbursed by [the] Lender . . . shall become additional debt of [Mr. Lucas] secured by the [deed of trust]."

[4] The amount Mr. Lucas owed was accelerated through 2014. According to the attorney conducting the foreclosure sale, Elizabeth Menist, if a unit is sold to a third-party, an adjustment is made so that the foreclosed unit owner is not charged for future assessments given that he or she no longer owns the unit. The third-party purchaser is then responsible for the monthly assessments as they become due.

Sonata publicly advertised the sale of the condominium in the Washington Post on May 23, May 28, and June 3, 2014. The advertisement stated that the condominium would be sold pursuant to D.C. Code § 42-1903.13, and that it would be "[s]old subject to a deed of trust for approximately $589,750.00 (as of 03/09/2007)[,]" referencing the Bank's deed of trust for Mr. Lucas's mortgage loan.

On June 4, Sonata held a public auction for the foreclosure sale and the condominium was sold to appellant Liu, the highest bidder at the auction, for $17,000. An accounting of the foreclosure sale, included in the record, demonstrates that, of the $17,000 purchase price for the condominium, Sonata deducted almost six months of unpaid condominium assessments, totaling $5,195.28, as well as interest on the assessments, attorney's fees, and other expenses from the foreclosure sale.[5]

The Bank attempted to pay the assessments owed to Sonata in order to stop the foreclosure sale. Sonata, however, did not receive the check from the Bank

---

[5] Ultimately, there was a surplus of $7,512.92 after Sonata collected the assessments ($5,192.28), interest ($216.45), attorney's fees and reimbursable costs ($2,788.93), advertising costs ($885.08), the auctioneer's commission ($425), and the lienholder's portion of interest on unpaid balance from buyer ($30.04).

until June 5, 2014, the day after the foreclosure sale. Accordingly, the Bank's check was returned with a letter indicating that the condominium had already been sold to a third-party purchaser. Ms. Liu recorded the deed of trust, dated July 1, 2014, which included a provision inserted by Sonata, stating: "The hereinafter described property is sold subject to a deed of trust recorded in the Office of the Recorder of Deeds at Instrument Number 2007035647."

On October 16, 2014, the Bank filed a claim for judicial foreclosure against Mr. Lucas, as the mortgagor in default under the note, and later joined Ms. Liu, the new record owner of the condominium, as a defendant in the action. In its claim, the Bank asserted its rights as the beneficiary of the deed of trust, and also notified the court that Mr. Lucas's loan had been accelerated, and that he owed $799,034.23 under the note.[6] In her defense, Ms. Liu maintained that she purchased the condominium at the foreclosure sale, free and clear of the Bank's mortgage lien, pursuant to both D.C. Code § 42-1903.13 (a)(2) and this court's

---

[6] In May 2014, the Bank sent Mr. Lucas a demand letter, and attached a "Payoff Quote" at the back of the letter. According to the Bank's quote, Mr. Lucas owes $589,749.85 for the principal balance on the note, $10,487.96 for an escrow advance, $62,873.59 for a corporate advance, $135,855.25 in interest, and $67.58 in late charges. These charges equate to $799,034.23, the total amount the Bank is currently seeking under the note.

decision in *Chase Plaza*.[7]  Both Ms. Liu and the Bank moved for summary judgment before the trial court.

On February 3, 2016, the trial court granted the Bank's motion for summary judgment and denied Ms. Liu's motion for summary judgment.  The trial court acknowledged that, at the time of Sonata's foreclosure sale, the law was unclear regarding the effect of a condominium association's foreclosure sale, pursuant to its super-priority lien, on a bank's first-priority mortgage lien.

Despite this lack of clarity in the law at the time of Ms. Liu's purchase, the trial court emphasized that the advertisements, the memorandum of sale to Ms. Liu, and the deed of trust all specified that the property was sold to Ms. Liu subject to the Bank's mortgage lien.  Thus, it was "abundantly clear" that Ms. Liu was purchasing the property subject to the Bank's lien.  Furthermore, the court noted that Ms. Liu had testified at a deposition that the property was worth between

---

[7]  On August 28, 2014, a few months after Ms. Liu's purchase of the condominium at the foreclosure sale, we issued our decision in *Chase Plaza*. Relying on the plain language and legislative history of the super-priority lien provision, as well as general principles of foreclosure law, we held that "a condominium association can extinguish a first deed of trust by foreclosing on its six-month super-priority lien under D.C. Code § 42-1903.13 (a)(2)." *Chase Plaza, supra*, 98 A.3d at 178.

$700,000 and $750,000, and that the District of Columbia Office of Tax and Revenue assessed the condominium at a value of $719,930. The court stated that the $17,000 purchase price "obviously reflected the understanding that the Property was subject to [the Bank's] lien." Accordingly, the trial court concluded that "[i]t would be an inequitable windfall and contrary to the parties' expectations to permit Ms. Liu to disavow [the Bank's] mortgage . . . and would impose an enormous foreclosure deficiency on [] [Mr.] Lucas if Ms. Liu's purchase is not subject to [the Bank's] lien, as was contemplated at the foreclosure sale." This appeal followed.

## II. Discussion

We review a trial court's order granting summary judgment *de novo*. *Chase Plaza, supra*, 98 A.3d at 172. In determining whether summary judgment was appropriate, we view the evidence in the light most favorable to the non-prevailing party and we draw all reasonable inferences in that party's favor. *See Woodland v. Dist. Council 20*, 777 A.2d 795, 798 (D.C. 2001). "Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Chase Plaza, supra*, 98 A.3d at 172 (citation and internal quotation marks omitted).

**A.** *Chase Plaza*

In *Chase Plaza*, this court was asked to, for the first time, address the proper interpretation of a condominium association's super-priority lien for unpaid assessments under D.C. Code § 42-1903.13 (a)(2), and the impact of an association's foreclosure, pursuant to a super-priority lien, on a bank's first deed of trust or first mortgage. We explained that, under the District of Columbia Condominium Act, condominium association liens for unpaid assessments are "split[] . . . into two liens of differing priority[.]" *Chase Plaza, supra*, 98 A.3d at 173. First, the condominium association is granted a lien for the most recent six months of unpaid condominium assessments, which is "higher in priority than the first mortgage or first deed of trust[,]" and commonly referred to as a "super-priority lien." *Id.*; *see also* D.C. Code § 42-1903.13 (a)(2) (stating that a condominium association's lien "shall [] be prior to a mortgage or deed of trust . . . to the extent of the common expense assessments . . . which would have become due in the absence of acceleration during the [six] months immediately preceding institution of an action to enforce the lien . . ."). Second, the Act grants the condominium association a lien for any remaining unpaid assessments beyond the most recent six-month period. *See* D.C. Code § 42-1903.13 (a). However, this

second lien is "lower in priority than the first mortgage or first deed of trust." *Chase Plaza, supra*, 98 A.3d at 173.

Thus, under the circumstances presented here, where a condominium unit owner defaults on both his mortgage payments and his condominium assessments, the condominium association's super-priority lien for the most recent six months of assessments, is higher in priority than the first mortgage or first deed of trust on the condominium unit. *See* D.C. Code § 42-1903.13 (a)(2); *Chase Plaza, supra*, 98 A.3d at 173. Importantly, the Act also expressly prohibits "variation by agreement," which prevents parties from contracting around the statute: "Except as expressly provided by this chapter, a provision of this chapter may not be varied by agreement and any right conferred by this chapter may not be waived." D.C. Code § 42-1901.07.

*Chase Plaza* involved facts similar to those presented in this case and therefore, is central to our consideration. In *Chase Plaza*, Chase Plaza Condominium Association, Inc. instituted foreclosure proceedings against a condominium unit owner to collect six months of unpaid assessments, pursuant to its super-priority lien under D.C. Code § 42-1903.13 (a)(2). *Chase Plaza, supra*, 98 A.3d at 168. Chase Plaza's notice of the foreclosure sale "specified that the

foreclosure sale would not be subject to the first deed of trust" and thus, the bank's first deed of trust, as a lien lower in priority than the condominium association's super-priority lien, would not be protected by the foreclosure sale. *Id.* After the condominium was sold to the highest bidder at the sale, JPMorgan Bank, as holder of the note for the first deed of trust, filed a complaint against Chase Plaza and the new record owner, requesting that the trial court set aside the foreclosure sale and declare that JPMorgan Bank held title to the unit. *Id.* at 169. The trial court granted summary judgment to JPMorgan Bank on the basis that "Chase Plaza could not lawfully extinguish [JPMorgan Bank's] first deed of trust[.]" *Id.* Accordingly, the trial court voided Chase Plaza's foreclosure sale "because the unit had not been sold subject to the first deed of trust." *Id.*

We reversed the trial court's decision, recognizing the general and well settled principle of foreclosure law that "liens with lower priority are extinguished if a valid foreclosure sale yields proceeds insufficient to satisfy a higher-priority lien[.]" *Id.* at 173. We observed further that the plain language of the super-priority lien provision, under D.C. Code § 42-1903.13 (a)(2), did not suggest that the Council of the District of Columbia intended to deviate from this general principle. *Id.* at 174. Upon a review of the legislative history of the super-priority lien provision, we noted that the Council intended for the super-priority lien to give

condominium associations "maximum flexibility in collecting unpaid condominium assessments." *Id.* (citing D.C. Council, Report on Bill 8-65, at 3 (Nov. 13, 1990)). We also noted that our super-priority lien provision had been modeled after similar provisions from the Uniform Common Interest Ownership Act ("UCIOA") and the Uniform Condominium Act ("UCA"), and that the drafters' official comments under those Acts indicated that they understood that a condominium association's foreclosure on its super-priority lien would extinguish a first mortgage or first deed of trust. *Id.* However, the drafters "expected that mortgage lenders would take the necessary steps to prevent that result, either by requiring payment of assessments into an escrow account or by paying assessments themselves to prevent foreclosure." *Chase Plaza, supra*, 98 A.3d at 174-75; *see also* UCIOA § 3-116, cmt. 2; UCA § 3-116, cmt. 2. For these reasons, we concluded that the condominium association's foreclosure pursuant to its super-priority lien effectively extinguished JPMorgan Bank's first deed of trust. *Chase Plaza, supra*, 98 A.3d at 175, 178.

## B. Analysis of Super-Priority Lien Provision

On appeal, neither party disputes this court's holding in *Chase Plaza*. Ms. Liu argues that the decision supports a conclusion that she purchased the

condominium at Sonata's foreclosure sale, free and clear of the Bank's mortgage lien. She contends that the anti-waiver provision of the Condominium Act precludes a condominium association from enforcing its super-priority lien at a foreclosure sale, subject to a first mortgage or deed of trust.[8]

Conversely, the Bank argues that the trial court properly granted its motion for summary judgment on equitable grounds because "the sale's advertisement, the auctioneer's statements [] at the sale, the Memorandum of Purchase signed by Ms. Liu, and the Trustee's Deed [] recorded by Ms. Liu" all demonstrate that the condominium was sold to Ms. Liu, subject to the deed of trust. The Bank argues that *Chase Plaza* is not applicable to this case because Sonata did not enforce its super-priority lien at its foreclosure sale, but instead elected to sell the condominium subject to its deed of trust. The Bank also challenges Ms. Liu's purchase at Sonata's foreclosure sale on other grounds, which we address later in this opinion.

---

[8] Ms. Liu further asserts that the provisions in the advertisement, on her memorandum of sale, and in the deed of trust, which indicated that the property was sold subject to the deed of trust, were only included because of the trial court's erroneous ruling in *Chase Plaza*, which was later reversed by this court. Notably, Ms. Liu mentions the attorney who conducted the foreclosure sale of the property at issue in this case was the same attorney who conducted the foreclosure sale in *Chase Plaza*.

To begin, we agree with Ms. Liu that the anti-waiver provision of the Condominium Act, D.C. Code § 42-1901.07, precludes a condominium association from exercising its super-priority lien while also preserving the full amount of the Bank's unpaid lien. D.C. Code § 42-1901.07 states "[e]xcept as expressly provided by this chapter, a provision of this chapter *may not be varied by agreement* and *any right conferred by this chapter may not be waived*." (emphasis added). As we stated in *Chase Plaza*, none of the provisions of the chapter expressly indicate that a super-priority lien may be contracted away by the parties or waived by the condominium association.

Furthermore, permitting a condominium association to exercise its super-priority lien while also preserving the full amount of the Bank's unpaid lien, defeats the Council's purpose in enacting the super-priority lien. The super-priority lien provision effectively shields condominium associations from pressure by lenders to require foreclosure-sale purchasers to agree that the property is subject to the first mortgage, a term that could reduce the number of interested bidders and impair the condominium association's ability to recover unpaid assessments.

Here, the record demonstrates that Sonata enforced its lien for Mr. Lucas's most recent six months of unpaid assessments, when it sold the condominium to Ms. Liu at the foreclosure sale. The foreclosure notice to Mr. Lucas and Sonata's letter to the Bank indicated that Sonata was seeking to collect $11,503.67 in unpaid assessments and related costs, and that if the amount was not paid, Sonata would institute foreclosure proceedings on the unit.

The Bank argues, however, that because the terms of the sale indicated that the unit would be sold subject to its first deed of trust, Sonata did not actually enforce its super-priority lien. The Bank also maintains that a condominium association may agree to subordinate its super-priority lien to a first deed of trust during a foreclosure sale. We disagree. Such a reordering of lien priorities would effectively constitute a waiver by the condominium association of its super-priority lien, which is not permitted under D.C. Code § 42-1901.07. That section expressly states that any right conferred under the Condominium Act may not be waived. "[W]hen the language of a statute is plain and unambiguous, we are bound by the plain meaning of that language." *See Hudson Trail Outfitters v. District of Columbia Dep't of Emp't Servs.*, 801 A.2d 987, 990 (D.C. 2002) (citation and internal quotation marks omitted). Thus, any attempt by a condominium association or a holder of a first mortgage or deed of trust to have a condominium

association's super-priority lien waived or varied by contract is invalid, as a matter of law.

To be clear, we are not stating that a foreclosing condominium association is required to foreclose pursuant to its super-priority lien.[9] However, here, where Sonata collected on only the most recent six months of unpaid assessments, we are satisfied that Sonata enforced its super-priority lien at the sale.[10] Under these circumstances, if the proceeds of the sale are insufficient to cover the first deed of trust, then the first deed of trust must be considered effectively extinguished. *See*

---

[9] We do not address the question of whether a lien covering a period in excess of six months prior to the 2017 amendment to D.C. Code § 42-1903.13 is properly conceptualized as a split-lien, which includes a six-month portion entitled to super-priority status, or as one lien, all of which is considered to be lower in priority to the first mortgage or deed of trust.

We also refrain from addressing the issue of whether the foreclosure sale should be set aside, given that the sole count in the complaint was one for judicial foreclosure, and in light of the Bank's statement that it "does not seek to set aside the June 4, 2014 sale in this action."

[10] The attorney conducting the foreclosure sale, Elizabeth Menist, also conducted the foreclosure sale in *Chase Plaza*. In this case, Ms. Menist testified that her intention was for Sonata to foreclose on a lien for January through December, 2014. However, given that the sale occurred on June 4, 2014, Sonata foreclosed on a lien covering slightly less than the six months entitled to super-priority status. As discussed in note 4, *supra*, an adjustment is made so that the foreclosed unit owner is not charged for future assessments.

*Chase Plaza, supra*, 98 A.3d at 176 (stating "the general rule that foreclosure on a lien with greater priority extinguishes liens with lower priority"). The plain language of D.C. Code § 42-1903.13 (a)(2), the super-priority lien provision, does not indicate an intent to deviate from this general principle. *Id.* at 175.

## C.  Equitable Estoppel

The Bank contends that the trial court properly concluded that Ms. Liu was equitably estopped from claiming that its mortgage interest was extinguished at the sale. We have recognized that "[a] party raising equitable estoppel must show that he changed his position prejudicially in reasonable reliance on a false representation or concealment of material fact which the party to be estopped made with knowledge of the true facts and intent to induce the other to act." *Nolan v. Nolan*, 568 A.2d 479, 484 (D.C. 1990) (citation and internal quotation marks omitted). In response, Ms. Liu asserts that the provisions in the advertisement, on her memorandum of sale, and in the deed of trust, which indicated that the property was sold subject to the deed of trust, were only included because of the trial court's erroneous ruling in *Chase Plaza*, which was later reversed by this court.

Here, the record does not support the trial court's application of the equitable estoppel doctrine to preclude Ms. Liu from maintaining that her purchase of the condominium was not subject to the Bank's deed of trust. To begin, the Bank has not demonstrated that it reasonably relied on the advertised terms of sale to protect its mortgage interest. To the contrary, the Bank attempted to pay the six months of condominium assessments in order to stop the foreclosure sale, but failed to make the payment on time. Moreover, although the Bank contends that it "reasonably relied upon Ms. Liu's actions in accepting the terms of the sale by not moving to vacate the sale after it occurred[,]" this argument lacks merit—the Bank was aware through its loan servicer that the state of the law on super-priority liens was in flux at the time, and that the Bank's interest could be subordinate to Sonata's interest in the event of a foreclosure sale.

Furthermore, the legislative history of the super-priority lien provisions and public policy concerns related to ensuring a condominium association's collection of unpaid assessments, also support a conclusion that equitable estoppel is not appropriate in this case. *See Sears v. Sears*, 293 F.2d 884, 887 (D.C. Cir. 1961) ("[A] court of equity, in determining whether to interpose the bar of equitable estoppel, must consider all the factors of the particular case at bar, the parties involved, the effect of the ultimate decision on third parties who are not before the

court, the nature of the rights sought to be vindicated and, as well, public policy as expressed by pertinent statutes and prior judicial declarations."). For example, in 2013, the Joint Editorial Board for Uniform Real Property Acts ("JEB")—a board established by the Uniform Law Commission ("ULC")—created a report, to in part, address the appropriate interpretation of the six-month limited priority lien provision.[11] *See* JEB Report, *supra* note 11, at 6. In its report, the JEB discussed how the depressed real estate market has led to incentives for banks to intentionally delay foreclosure proceedings, at the expense of condominium associations, which are forced to forgo timely payments of assessments, and at the expense of condominium association residents who "bear the consequences of default by a [condominium unit owner] [on] assessment obligations." *Id.* at 4. In this case, Mr. Lucas was in default on both his mortgage payments and his condominium assessments for a lengthy period, from 2009 to 2014, yet the Bank waited five years to institute foreclosure proceedings on the unit. In addition, the

---

[11] The JEB monitors all uniform real property acts and "provides guidance to the [ULC] and others regarding potential subjects for uniform laws relating to real estate[.]" Report of the Joint Editorial Bd. for Unif. Real Prop. Acts, *The Six-Month "Limited Priority Lien" for Association Fees Under the Uniform Common Interest Ownership Act* (June 1, 2013) ("JEB Report"). The Board is made up of representatives from the ULC, the American Bar Association's Real Property, Trust and Law Section, and the American College of Real Estate Lawyers, and liaisons from the American College of Mortgage Attorneys, the American Land Title Association, and the Community Associations Institute.

condominium association had to file several notices of foreclosure in an effort to obtain payments to cover Mr. Lucas's defaults on the assessments. It is this prejudice to condominium associations from extended delays by a bank to institute foreclosure on a condominium unit, which the super-priority lien was intended to prevent.

Finally, and most importantly, we note that equitable relief is not available when granting such relief would contravene the express provision of a statute. The judicial system is charged with enforcing public policy as embodied by legislative statute. "It is a basic maxim that equity is ancillary, not antagonistic, to the law. Equitable relief is not available when the grant thereof would violate the express provision of a statute." *Dep't of Transp. v. Am. Ins. Co.,* 491 S.E.2d 328, 331 (Ga. 1997) (citation and internal quotation marks omitted); *see also T.F. v. B.L.,* 813 N.E.2d 1244, 1253-54 (Mass. 2004) (citation and internal quotation marks omitted) (stating that "[e]quity is not an all-purpose judicial tool by which the right thing to do can be fashioned into a legal obligation possessing the legitimacy of legislative enactment"). Although it may seem like Ms. Liu was able to procure the property for a relatively low amount of money through the foreclosure process, any concerns about this process are properly addressed through the legislative process. Moreover, the Bank still retains a claim against Mr. Lucas, the borrower under the

Bank's mortgage loan, from whom the Bank can seek to recover the remaining balance owed on Mr. Lucas's mortgage.

### D.  The Bank's Additional Claims

The Bank makes a few additional challenges to Sonata's foreclosure sale, which warrant brief discussion.  First, the Bank argues that Sonata was permitted to conduct the foreclosure sale subject to the Bank's first deed of trust, because a secured party bank and a condominium association may agree to subordinate a condominium association's super-priority lien to a bank's mortgage lien under the JEB Report.  However, this is a mischaracterization of the JEB Report.  Example One of the JEB Report addresses an instance in which a unit owner is in default on both its mortgage with the bank and its common expense assessments, and the bank institutes foreclosure proceedings on the unit.  JEB Report, *supra* note 11, at 7-8.  Example One clarifies that a bank's foreclosure on the unit will not extinguish the association's super-priority lien because that lien is senior to the bank's lien. *Id.* at 7.  Instead, the association's super-priority lien will transfer to the proceeds of the sale, and the buyer at the foreclosure sale will take title to the unit, subject to the association's six-month super-priority lien. *Id.* at 7-8.  In this example, the JEB Report mentions that as an alternative, the bank and the association may agree that

the foreclosure sale will deliver clear title to the buyer, with the proceeds of the sale being distributed first to the association to cover its six months' worth of unpaid assessments prior to being applied to the bank's unpaid mortgage balance. *Id.* at 8. This alternative, however, does not suggest that the association may subordinate its senior lien status; to the contrary, it reinforces the principle that an association's six-month priority lien has "true priority" over the bank's subordinate lien. *See id.*

Next, the Bank argues that Sonata could only impose its six-month super-priority lien through a judicial foreclosure, and maintains that because the association conducted a non-judicial foreclosure in this case, the sale could not operate to extinguish the Bank's mortgage lien. We disagree. The Bank cites to the version of D.C. Code § 42-1903.13 (a)(2) in effect on the date of the foreclosure sale, which states that:

> [t]he lien shall also be prior to a mortgage or deed of trust . . . to the extent of the common expense assessments based on the periodic budget adopted by the unit owners' association which would have become due in the absence of acceleration during the 6 months immediately preceding institution of an action to enforce the lien.

However, the statute also contemplates non-judicial enforcement of liens, as occurred in *Chase Plaza*—D.C. Code § 42-1903.13 (c)(1) expressly states that "[t]he unit owners' association shall have the *power of sale* to enforce a lien for

assessments against a condominium unit . . . unless the power of sale procedures are specifically and expressly prohibited by the condominium instruments." (emphasis added). Here, the condominium by-laws explicitly authorize a non-judicial foreclosure, stating that "[t]he lien for assessments may be foreclosed in the manner provided by the laws of the District of Columbia either, at the option of the Board of Directors, by a sale in a non-judicial proceeding or by suit brought in the name of the Board of Directors, acting on behalf of the Association." Moreover, effective June 21, 2014, D.C. Code § 42-1903.13 (a)(2) was amended to include language referring to "institution of an action to enforce the lien or recordation of a memorandum of lien against the title to the unit by the unit owners' association." "While the action of a later Council usually does not provide definitive evidence of the intent underlying the action of a former Council," *see Coleman v. Cumis Ins. Soc'y*, 558 A.2d 1169, 1172-1173 (D.C. 1989), the fact that the 2014 "clarif[ication]" is consistent with the official comments of the UCIOA and the UCA, discussed below, "lends some support for our view that . . . the [earlier] Council intended to" provide for foreclosure of a super-priority lien through a condominium association's power of sale. *Id.*

The official comments of the UCIOA and the UCA for the super-priority lien provisions state that an association's super-priority lien may be foreclosed in

the same manner in which a mortgage on real estate is foreclosed. *See* UCIOA § 3-116 (k)(1); UCA § 3-116 (a); *see also* JEB Report, *supra* note 11, at 9 n.8 ("[A]n association may foreclose its lien by non-judicial proceedings if the state permits non-judicial foreclosure."). In this jurisdiction, a mortgage lender may foreclose on a unit through judicial foreclosure or non-judicial foreclosure, and accordingly, Sonata had the option of pursuing either type of foreclosure in this case. *See* D.C. Code §§ 42-815, -816 (2012 Repl.). Thus, Sonata was not precluded from pursuing non-judicial enforcement of its super-priority lien.

Lastly, the Bank argues that Sonata's foreclosure sale could not have been conducted pursuant to its super-priority lien because Sonata had already previously attempted to foreclose on the unit. The Bank, relying on Example Three in the JEB Report, is correct that the super-priority lien provision "does not . . . authorize an association to file successive lien enforcement actions every six months as a means to extend the association's limited lien priority." JEB Report, *supra* note 11, at 12. Example Three in the JEB Report, however, is based on a case in which a foreclosure action is already pending at the time the association attempts to file an additional foreclosure action; as a foreclosure action had already been initiated, the additional action was not necessary to enforce the association's lien and represented an attempt to extend the association's lien priority beyond the six

months entitled to super-priority status. Although this precludes an association from obtaining super-priority status on an amount in excess of six months while a foreclosure action is pending, it does not preclude an association from enforcing another super-priority lien if there is no action pending.

In *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, the United States District Court for the District of Nevada stated that it could not find "any authority stating that an [association] is precluded from bringing multiple enforcement actions to enforce entirely separate liens (with super[-]priority portions) for unpaid assessments against the same parcel of property." 200 F. Supp. 3d 1141, 1167 (D. Nev. 2016). The court recognized that the JEB Report barred multiple attempts to "enforce the super[-]priority portion of its lien multiple times during the pendency of the same bank foreclosure action" but that no such bar existed for a subsequent enforcement action to enforce a separate lien when no other foreclosure action was pending. *Id.* at 1168. Similarly, in this case, although Sonata had previously collected on a separate super-priority lien, they were not barred from filing a successive foreclosure action when no such action was pending.

## III. Conclusion

In sum, we conclude that a condominium association, acting on its six-month super-priority lien for unpaid condominium assessments, pursuant to D.C. Code § 42-1903.13 (a)(2), may not conduct its foreclosure sale subject to the first deed of trust. Although Sonata's foreclosure sale in this case was purportedly subject to the Bank's deed of trust, the anti-waiver provision of D.C. Code § 42-1901.07, precludes a condominium association from waiving the priority of its super-priority lien or exercising its super-priority lien while also preserving the full amount of the Bank's unpaid lien. Thus, when Sonata enforced its super-priority lien to collect six months of unpaid assessments at the foreclosure sale, the Bank's first deed of trust for the condominium was effectively extinguished and Ms. Liu purchased the condominium free and clear of the Bank's deed of trust. Accordingly, we reverse the trial court's order granting summary judgment to the Bank and remand for further proceedings.

*So ordered.*